[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 4, 2003
THOMAS K. KAHN
CLERK

_____

No. 01-15827

_____

D. C. Docket No. 99-02552 CV-B-NE

MELVIN ALAN WOOD,

Plaintiff-Appellee,

versus

MICHAEL KESLER, individually and in his
capacity as an Alabama State Trooper,

Defendant-Appellant,

BRIAN JONES,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 4, 2003)

Before CARNES, HULL and ALARCON[*], Circuit Judges.

_____

[*]Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth
Circuit, sitting by designation.

HULL, Circuit Judge:

Defendant Michael Kesler, a state trooper, appeals the denial of immunity on plaintiff's § 1983 claims and state law claims. We reverse because defendant Kesler was entitled to qualified immunity on the § 1983 claims and discretionary-function immunity on the state law claims.

## I. FACTUAL BACKGROUND

### A. Traffic Stop

On March 30, 1998, plaintiff Melvin Alan Wood ("Wood") was driving a large tractor truck called a "mobile home hauler." Instead of a mobile home, Wood was carrying a pickup truck "piggyback," and the pickup truck was completely off the ground. Wood's passenger was Bob Payne. Traveling behind Wood, David Martin was driving another "mobile home hauler," also without a mobile home.

Both Wood and Martin were driving their tractor trucks northbound on I-65 in Alabama to pick up mobile homes for transport in Nashville, Tennessee. Kesler, a state trooper in Alabama, was monitoring northbound traffic on I-65 north of Athens, Alabama. This stretch of interstate highway was under construction and had been reduced to a single lane of traffic on the northbound

2

side.  Only the left lane of the northbound interstate was open.  Marker barrels were positioned between the left lane and the closed right lane of the northbound interstate.  Trooper Kesler was parked in the closed right lane with his vehicle at the bottom of a hill and facing the oncoming northbound traffic.  Because of the construction and barrels, the normal speed limit of 70 mph was reduced to 45 mph for the single open lane of the northbound side.

Trooper Kesler stopped both Wood and Martin for speeding.  They each produced a driver's license, log book, and medical card.  Kesler cited Wood and Martin for speeding and not having updated log books.  The citation for Wood charged him with speeding at 62 mph in a 45 mph zone.  Trooper Kesler advised both drivers to update their log books at the nearest truck stop.

In his deposition, plaintiff Wood denies that he was speeding.  Wood testified that he was traveling "around the 45 zone, maybe less, because I had been through that zone.  And I knew that the troopers had been working it strongly."  Upon seeing Trooper Kesler's blue lights flashing, Wood "didn't hit [his] brakes

or anything," but just "went on down the hill and pulled off."[1]  According to

Wood, Kesler never informed him that his conduct constituted reckless driving.[2]

Further, Wood's passenger Payne testified that Wood did not lock his

brakes, swerve or lose control of his truck.  Martin, driving behind Wood, testified

that Wood slowed his vehicle to approximately 45 to 50 mph.

### B. Reckless Driving Citation

Trooper Kesler's traffic citations set plaintiff Wood's initial court

appearance for May 4, 1998.  Wood appeared in court, pled not guilty and

requested a trial date, which was set for July 8, 1998.  Later, Wood, pro se, filed a

document request for Kesler's records.  On the advice of his superiors and the

district attorney's office, Kesler did not provide the documents or respond.

---

[1]We recount the facts in the light most favorable to Wood, the non-moving party, on a motion for summary judgment. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002); Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998).  For that reason, what we set out in this opinion as "the facts" for summary judgment purposes may not be the actual facts.  See Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995).

[2]Kesler contends that he advised both drivers that their conduct constituted reckless driving, but that in his discretion he would not issue citations for that offense.

At trial on July 8, 1998, plaintiff Wood refused to accept a plea bargain and decided to defend against the charges.[3]  At that time, Assistant District Attorney Brian Jones spoke with both plaintiff Wood and Trooper Kesler about the circumstances surrounding the speeding and log book citations.  Kesler advised prosecutor Jones that Wood had lost control of his vehicle due to Wood's locking his brakes, but that Kesler had decided not to issue a reckless driving citation to Wood.  After speaking with Trooper Kesler, prosecutor Jones instructed Kesler to issue Wood a citation for violation of the reckless driving statute.[4]

Trooper Kesler complied with Jones's instruction, back-dating the reckless driving citation to March 30, 1998, the date of the speeding charge.[5]  Kesler also obtained an arrest warrant on the reckless driving charge.  Kesler did not believe

---

[3]Martin entered into a plea agreement with prosecutor Jones on July 8, 1998.

[4]The record is unclear about the number of times that prosecutor Jones spoke with Wood and Kesler and in which order.  Wood originally filed his complaint against Trooper Kesler only, but he amended it to add Assistant District Attorney Brian Jones as a defendant.  The district court dismissed defendant Jones from the case, and Jones is not a party to this appeal.

[5]Wood's complaint alleges that Kesler made false written statements on the reckless driving citation; however, he does not indicate which statements were false.

5

that he could refuse when prosecutor Jones told him to write the reckless driving citation. Kesler felt that Jones was his superior.

C. Wood's Arrest

Wood refused to sign the reckless driving citation, despite being informed that it was not an admission of guilt and that refusing to sign it would result in his being arrested and taken to jail. Trooper Kesler then arrested Wood and took him to the county jail. The full custodial arrest was based on Wood's refusal to sign the citation. On the way to the jail, Kesler asked Wood why he had not taken the plea agreement and why he had requested Kesler's records. Wood spent four to five hours at the jail before being released.

At a subsequent trial on the charges, the court found Wood guilty as charged of speeding 62 mph in a 45 mph zone and not guilty of reckless driving.[6]

## II. PROCEDURAL HISTORY

Wood filed this action against Trooper Kesler in his individual and official capacities alleging civil rights violations under 42 U.S.C. § 1983, a civil rights

---

[6]The front of the speeding citation expressly charges that Wood was traveling "62 mph" in a "45 mph Speed Limit." The back of the speeding citation is signed by the magistrate judge, and states that the magistrate judge found Wood "Guilty as charged."

conspiracy under 42 U.S.C. § 1985, and false arrest and malicious prosecution under Alabama law.

Following discovery, defendant Kesler moved for summary judgment. The district court granted summary judgment in Kesler's favor on all claims against him in his official capacity and on Wood's § 1985 claim against him individually. The district court, however, denied summary judgment to Kesler individually on Wood's § 1983 claims and state law claims. Kesler timely appealed seeking immunity on all remaining claims.[7]

### III. QUALIFIED IMMUNITY ON § 1983 CLAIMS

We first address whether Trooper Kesler is entitled to qualified immunity on plaintiff Wood's § 1983 claims for false arrest, malicious prosecution, and retaliation.[8] Wood asserts that Kesler lacked probable cause to charge him with

---

[7]The denial of summary judgment based on absolute and qualified immunity is immediately appealable, Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), and so is the denial of Alabama's discretionary-function immunity, Sheth v. Webster, 145 F.3d 1231, 1238 (11th Cir. 1998). See also Taylor v. Adams, 221 F.3d 1254, 1260 n.9 (11th Cir. 2000) (stating that "the same principles of federal law governing an appeal of the denial of qualified immunity at the summary judgment stage also govern an appeal of the denial of Alabama discretionary-function immunity at the same stage"); Nolin v. Isbell, 207 F.3d 1253, 1255 n.1 (11th Cir. 2000).

[8]We review de novo the denial of summary judgment, construing the facts in the light most favorable to the non-moving party. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002); Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999).

reckless driving and to arrest him. Wood contends that Kesler did so maliciously and in retaliation for Wood's exercising his rights to trial and to subpoena records.

A. General Principles

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. (internal quotation marks omitted). Here, it is clear that Trooper Kesler was acting within the course and scope of his discretionary authority when he charged and arrested Wood. "Once the defendant establishes

8

that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id.

The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 2513, 153 L. Ed. 2d 666 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard, 311 F.3d at 1346 (quoting Saucier, 533 U.S. at 201). Thus, we now analyze whether Trooper Kesler's conduct violated Wood's constitutional rights.

B. False Arrest

An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest. See Lee, 284 F.3d at 1194-95; Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996); Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990). "For probable cause to exist, … an arrest must be objectively

9

reasonable based on the totality of the circumstances." Lee, 284 F.3d at 1195. "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." Lee, 284 F.3d at 1195 (internal quotation marks and citations omitted) (alteration in original).

To receive qualified immunity protection, "an officer need not have actual probable cause but only 'arguable probable cause.'" Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997). Because only arguable probable cause is needed, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Id. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (internal quotation marks omitted).

10

We conclude that Kesler had actual probable cause to issue the reckless driving citation and to arrest Wood. To show why, we discuss Alabama's reckless driving statute and then the evidence in this case. Ala. Code § 32-5A-190(a) defines reckless driving as follows:

> Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.

This statute divides the offense of reckless driving into two alternatives. See White v. State, 69 So. 2d 874, 875 (Ala. Ct. App. 1953). The first alternative prohibits driving a vehicle "carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property." Ala. Code § 32-5A-190(a). The second alternative prohibits driving "without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property." Id.

Under Alabama law, the phrase "without due caution and circumspection" means "no more than negligence." Kirk v. State, 47 So. 2d 283, 285 (Ala. Ct. App. 1950). Wood thus may be guilty of reckless driving by driving negligently and at a speed or in a manner likely to endanger any person or property. Id.; Ala Code § 32-5A-190(a).

11

Further, under Alabama law, what constitutes reckless driving is generally a question of fact based on the total circumstances. See, e.g., Bailey v. State, 96 So. 2d 829, 829 (Ala. Ct. App. 1957) (evidence sufficient to show reckless driving when defendant sped up upon seeing officers, instigated police chase, and drove seven or eight miles over a rough, slick road at speeds ranging from 75 to 90 mph); Bradford v. State, 47 So. 2d 599, 600 (Ala. Ct. App. 1950) (evidence sufficient to sustain conviction where defendant passed two cars on sharp curve driving 70 to 75 mph); see also Malbis Bakery Co. v. Collins, 15 So. 2d 705, 708 (Ala. 1943) (whether allowing four persons to ride in front seat was absence of "due caution and circumspection" was a question of fact under all of the circumstances).[9]

In light of this Alabama law, the evidence shows that Trooper Kesler had actual probable cause to charge Wood with reckless driving. Wood was driving a

_____

[9]White, Kirk, Bailey, Bradford and Malbis Bakery all interpreted Title 36, Section 3, Code 1940, a prior version of the reckless driving statute, which was nearly identical to the current version. Title 36, Section 3, Code 1940 read:

> Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.

Bailey v. State, 96 So. 2d 829, 829 (Ala. Ct. App. 1957) (quoting Title 36, Section 3, Code 1940).

12

large tractor truck and hauling yet another vehicle. The interstate highway was reduced to a single lane of traffic due to construction and barrels divided the open and closed lanes. Due to these hazardous conditions, the normal speed limit of 70 mph was reduced to 45 mph. Wood, however, was driving 17 mph over that speed limit. The net result is that Wood was speeding in a large tractor truck in an area of hazardous conditions on an interstate highway. Under these facts, an officer in Trooper Kesler's position had actual probable cause to believe that Wood was violating the reckless driving statute. See Ala. Code § 32-5A-190(a).

In particular, Wood's speeding, his going 17 mph over the speed limit, is an established fact properly considered in determining if probable cause existed for the reckless driving citation. This is because Wood's conviction for driving at 62 mph in a 45 mph zone collaterally estops him from relitigating the fact of his speeding in this § 1983 case. See Brown v. City of Hialeah, 30 F.3d 1433, 1437 (11th Cir. 1994) (indicating that collateral estoppel applies in § 1983 cases and that we determine the preclusive effect of a state court judgment by applying the estoppel rules of that state); Vazquez v. Metro. Dade County, 968 F.2d 1101, 1106 (11th Cir. 1992) (same); Parker v. Williams, 862 F.2d 1471, 1475 n.2 (11th Cir. 1989) ("Defendant Williams had his opportunity to litigate the fact of the rape in his state criminal proceeding. Therefore, collateral estoppel was available to

13

preclude him from relitigating the issue in this [§ 1983] case [against the Macon County, Alabama chief jailer].”), overruled in part on other grounds by Turquitt v. Jefferson County, 137 F.3d 1285 (11th Cir. 1998) (en banc); Marcus v. St. Paul Fire and Marine Ins. Co., 651 F.2d 379, 382 n.3 (5th Cir. Unit B 1981) (applying Alabama law and stating generally that “[a] party may be precluded by factual issues decided against it in a previous case, even if the estoppel is raised in the second case by a litigant who was not a party to the first proceeding in which the issue was determined”). [10]

---

[10]Alabama’s law on collateral estoppel is somewhat unclear, but under any reading of that law, collateral estoppel applies to preclude Wood, as a party to the prior speeding case, from contending in this case that he was not speeding. Many Alabama decisions apply collateral estoppel as long as the party against whom it is asserted was a party, or in privity with a party, in the prior case. See, e.g., McCorkle v. McElwey, 576 So. 2d 202, 205 (Ala. 1991) (stating that “[w]hile the issue preclusion aspect of res judicata does not require complete identity of parties, it does require that the party against whom res judicata is asserted either was a party or was in privity with a party to the prior action”); Constantine v. United States Fid. and Guar. Co., Inc., 545 So. 2d 750, 755-56 (Ala. 1989); Whisman v. Alabama Power Co., 512 So. 2d 78, 82 (Ala. 1987) (stating “[t]he party identity criterion of res judicata does not require complete identity, but only that the party against whom res judicata is asserted was either a party or in privity with a party to the prior action”); Pearson v. City of Hoover, 706 So. 2d 1251, 1252-53 (Ala Civ. App. 1997).

Other decisions appear to require mutuality, that is both parties must be the same in both suits or in privity with them, and bound by the previous judgment, or neither party may invoke collateral estoppel in the subsequent case. Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 821 So. 2d 158, 165 (Ala. 2001) (stating “Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of

Trooper Kesler also had actual probable cause to arrest Wood for refusing to sign the reckless driving citation. Under Alabama law, refusal to sign a citation is cause for a custodial arrest. Gouin v. State, 581 So. 2d 1279, 1282 (Ala. Crim. App. 1991) (citing Ala. Code § 32-1-4(a) and stating that "the custodial arrest was authorized and justified because the appellant refused to sign the traffic ticket"); Hays v. City of Jacksonville, 518 So. 2d 892, 893 (Ala. Crim. App. 1987).[11] There is no dispute that Wood refused to sign the reckless driving citation and that he was aware that if he refused to sign, he would be taken to jail.

---

estoppel requirement" but concluding the corporation was in privity with its sole shareholder and estoppel applied); Redmond v. Bankester, 757 So. 2d 1145, 1150-51 n.2 (Ala. 1999); Hurt v. Pullman Inc., 764 F.2d 1443, 1450-51 (11th Cir. 1985). Alabama, however, follows an expansive definition of privity, which includes not only a successive interest to the same property right, but also "an identity of interest in the subject matter of the litigation." See, e.g., Leon C. Baker, P.C., 821 So. 2d at 165; see also Dairyland Ins. Co. v. Jackson, 566 So. 2d 723, 726 (Ala. 1990) (collecting cases on "identity of interest" test for privity). Wood was a party in both cases. Although State Trooper Kesler was not a party in the prior case, Kesler acted for the State in charging Wood with speeding in the prior case and shares an identity of interest with the State in the subject matter of the litigation. Thus, any mutuality requirement is satisfied.

[11]In any event, the United States Supreme Court recently has concluded that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

In sum, Trooper Kesler had actual probable cause to issue the reckless driving citation and to arrest Wood.[12] Because Wood has not established a Fourth Amendment violation, Trooper Kesler is entitled to qualified immunity on Wood's § 1983 false arrest claim. See Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990) ("The existence of probable cause … is an absolute bar to a section 1983 action for false arrest.").[13]

C. Malicious Prosecution

---

[12]Wood asserts that Kesler's admission that he was not surprised that Wood was found not guilty of reckless driving is somehow evidence that Kesler lacked probable cause. We disagree because the probable cause determination is entirely different from the standard for a conviction. Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002); see also Von Stein, 904 F.2d at 578 n.9 ("'Probable cause' defines a radically different standard than 'beyond a reasonable doubt,' and while an arrest must stand on more than suspicion, the arresting officer need not have in hand evidence sufficient to obtain a conviction.").
Wood also contends that former Mississippi sheriff Payne's testimony that Wood did nothing to constitute reckless driving is evidence of no probable cause. Payne's personal legal conclusion is irrelevant, and we look to the facts to determine probable cause.

[13]While Trooper Kesler had actual probable cause to issue the citation and arrest Wood, we note Kesler also had arguable probable cause, which is all that is required for an arresting officer to be entitled to qualified immunity from a Fourth Amendment claim. Lee, 284 F.3d at 1195; Montoute, 114 F.3d at 184. Trooper Kesler also seeks absolute prosecutorial immunity on the basis that prosecutor Jones directed him to issue the reckless driving citation, and thus that Kesler was performing only a prosecutorial function under the direction of a state prosecutor. Because Kesler is entitled to qualified immunity, we need not address absolute immunity.

Plaintiff Wood also asserts a § 1983 claim for malicious prosecution based on Trooper Kesler's issuing the reckless driving citation and arresting him. Our Court has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983. See Uboh v. Reno, 141 F.3d 1000, 1002-04 (11th Cir. 1998); Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir. 1996); Kelly v. Curtis, 21 F.3d 1544, 1554-55 (11th Cir. 1994).[14] To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution. See Uboh, 141 F.3d at 1002-04; Whiting, 85 F.3d at 584-86; Kelly, 21 F.3d at 1544, 1553-55.[15] As to the constituent elements of the common law

---

[14]In Albright v. Oliver, 510 U.S. 266 (1994) (plurality opinion), the Supreme Court concluded that the substantive due process component of the Fourteenth Amendment did not provide the constitutional source of a right to be free from malicious prosecution. But, the Court left open the possibility that the Fourth Amendment is the appropriate source of the right to be free from malicious prosecution. Id. at 274-75. While there is no definitive Supreme Court decision, our Court has recognized the constitutional tort of malicious prosecution under the Fourth Amendment.

[15]In Whiting, we emphasized that the federal right to be free from malicious prosecution "is actually a description of the right to be free from an unlawful seizure which is part of a prosecution." 85 F.3d at 584 n.4; see United States Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1289 n.16 (11th Cir. 2001) (stating "TIECO, a corporation, was never arrested, detained, or seized in any way" and "[t]hus, the Fourth Amendment violation envisioned by Whiting could not have

17

tort of malicious prosecution, this Court has looked to both federal and state law and determined how those elements have historically developed. Uboh, 141 F.3d at 1002-04; Whiting, 85 F.3d at 584-86. For example, in Uboh, this Court examined both federal law and Georgia law and indicated that, for purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution included: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. 141 F.3d at 1004.[16] We note that these are also the same

occurred in this case"). Other circuits agree. See Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000) (citing decisions from the First, Second, Seventh, Tenth and Eleventh circuits and stating that "[o]thers have held that the malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort").

[16]In Uboh this Court stated:
> Because the species of Fourth Amendment violation alleged in this case arises by way of analogy to the common law tort of malicious prosecution, courts historically have looked to the common law for guidance as to the constituent elements of the claim. …

Georgia law provides that:
> [a] criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action.

O.C.G.A. § 51-7-40. Further, in order to state a cause of action for malicious prosecution, a plaintiff must allege and prove that the criminal proceeding that gives rise to the action has terminated in

elements required under Alabama law for the tort of malicious prosecution. Delchamps, Inc. v. Bryant, 738 So. 2d 824, 831-32 (Ala. 1999).

This Court in Uboh also had to determine whether the common law element of favorable termination was met. 141 F.3d at 1004. To do so, the Uboh Court determined what constituted a favorable termination by examining primarily federal law. Id. at 1004-06. In sum, although both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law.[17]

_____

favor of the accused. See Kelly v. Serna, 87 F.3d at 1240-41; Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

141 F.3d at 1004. In Uboh, the plaintiff initially filed his action against the defendant federal officers pursuant to 42 U.S.C. § 1983, but later amended the complaint to allege correctly a cause of action within the framework of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). 141 F.3d at 1001 n.2. Although technically a Bivens action, Uboh essentially treated the constitutional tort of malicious prosecution under the Fourth Amendment as having the same elements whether brought under § 1983 against state actors or under Bivens against federal actors.

[17]See Green v. Montgomery, 219 F.3d 52, 60 n.2 (2d Cir. 2000) ("[The] federal law of probable cause – not state law – should determine whether a plaintiff has raised a genuine issue of material fact with respect to a § 1983

19

In this case, Wood's § 1983 malicious prosecution claim is that Trooper Kesler maliciously issued a reckless driving citation without probable cause and caused him to be unreasonably "seized" by making a custodial arrest on that charge when he refused to sign the citation. While a seizure (i.e., an arrest in fact) occurred in the course of the prosecution, Wood has not shown that Kesler acted without probable cause, which is a required element of Wood's § 1983 malicious prosecution claim. As outlined above, Trooper Kesler had actual probable cause to issue the reckless driving citation and for the custodial arrest, and thus, that probable cause bars his § 1983 malicious prosecution claim.

Because Wood has not shown a Fourth Amendment violation, Trooper Kesler is entitled to qualified immunity on Wood's § 1983 malicious prosecution claim.

D. Retaliation

Wood also asserts a § 1983 retaliation claim based on Kesler's conduct. Although Wood attempts to rely on the Fourth Amendment, there is no retaliation claim under the Fourth Amendment separate and distinct from Wood's malicious

_____

malicious prosecution claim."). When malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state.

20

prosecution and false arrest claims.[18]  Instead, the only cause of action for retaliation that arguably applies here is retaliatory prosecution in violation of the First Amendment.

That retaliatory prosecution claim, however, is also defeated by the existence of probable cause.  See Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002) (affirming summary judgment on retaliatory arrest claim in violation of plaintiff's First Amendment rights and stating that "[w]hatever the officers' motivation, however, the existence of probable cause … defeats her … claim"); Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998) ("Because we hold that the officers had arguable probable cause to arrest [the plaintiff] for disorderly conduct, we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims."); Keenan v. Tejada, 290 F.3d 252, 260 (5th Cir. 2002) (noting that "retaliatory criminal prosecutions in violation of the First Amendment are actionable only if a plaintiff can also prove the common-law elements of malicious prosecution, including the absence of

----

[18]Wood points to Whiting v. Traylor, 85 F.3d 581 (11th Cir. 1996) and Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999), but Whiting involved a malicious prosecution claim under the Fourth Amendment, and Jones concerned a false arrest claim under the Fourth Amendment.  Neither decision supports a separate and distinct retaliation claim under the Fourth Amendment.

21

probable cause to prosecute"). Therefore, Kesler is entitled to qualified immunity on Wood's § 1983 retaliation claim.

## IV. DISCRETIONARY-FUNCTION IMMUNITY

Plaintiff Wood also asserted state law claims for malicious prosecution and false arrest; however, Trooper Kesler is entitled to Alabama's discretionary-function immunity on Wood's state law claims.

In Alabama, law enforcement officers, such as Trooper Kesler, enjoy statutory immunity from suit for the "performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338.[19] "Under discretionary-function-immunity analysis, a court first determines whether the government defendant was performing a discretionary function when the alleged wrong occurred; if so, 'the burden shifts to the plaintiff to demonstrate that the defendant[ ] acted in bad faith, with malice or willfulness in order to deny [him] immunity.'" Scarbrough v. Myles, 245 F.3d 1299, 1303 n.9 (11th Cir. 2001) (alteration in original) (applying Alabama law and quoting Sheth v. Webster, 145 F.3d 1231, 1239 (11th Cir. 1998)). Discretionary acts are "'those acts as to which

_____

[19]See also Ala. Const. art. I, § 14. This provision also affords certain immunity to state agents in their individual capacities. See, e.g., Ex Parte Butts, 775 So. 2d 173, 177-78 (Ala. 2000); Ex Parte Cranman, 792 So. 2d 392 (Ala. 2000). We need not address the scope of this constitutional immunity as Trooper Kesler is entitled to statutory immunity in any event.

there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.'" Sheth, 145 F.3d at 1239 (quoting Wright v. Wynn, 682 So. 2d 1, 2 (Ala. 1996)); see Ex Parte City of Montgomery, 758 So. 2d 565, 570 (Ala. 1999).

Under Alabama law, Kesler's issuance of the reckless driving citation and arrest of Wood were discretionary acts for immunity purposes. Ex Parte City of Montgomery, 758 So. 2d at 570; Wright, 682 So. 2d at 2. Furthermore, Wood has not presented any evidence that Kesler acted in bad faith, maliciously or willfully to deny him discretionary-function immunity. Wood stresses that Kesler did not respond to his subpoena request and that Kesler asked Wood about this request during the ride to the jail. Kesler, however, showed the subpoena request to his superiors and was advised that he was not required to produce the records. There is no evidence of any malicious motive.

Wood further contends that Kesler's delay in issuing the reckless driving citation and his asking about Wood's not guilty plea evidence Kesler's bad faith. Although Kesler did not issue the citation at the scene on March 30 and allegedly asked about Wood's not guilty plea, this does not alter the fact that he had probable cause to issue it. The existence of probable cause, and in particular the

23

facts showing that probable cause, contradict any suggestion of malicious intent or bad faith. See Ex Parte City of Montgomery, 758 So. 2d at 570. Further, even assuming the ultimate decision to issue the reckless driving citation was Kesler's, he acted on prosecutor Jones's request, which further defeats the claim of malice or bad faith. Thus, we conclude that under Alabama law Trooper Kesler is entitled to discretionary-function immunity on Wood's state law claims for false arrest and malicious prosecution.

## V. CONCLUSION

For these reasons, we reverse the denial of defendant Kesler's motion for summary judgment and remand this case to the district court for entry of final judgment in favor of Trooper Kesler on all of Wood's claims.

**REVERSED AND REMANDED**