WALTER, District Judge,
concurring in part and dissenting in part:
I join in part I of the majority opinion which holds that Gaither had reasonable suspicion to stop Jenkins. I do not agree, however, with the majority’s conclusion in part II that Gaither and Acosta had arguable probable cause to arrest Jenkins.
As an initial matter, it is important to note that this dissent may be difficult to completely understand without having seen the video of the lead-up to the arrest. It is especially true here that a picture speaks a thousand words. The Supreme Court has held that a court may rely on a videotape if a party’s version of the facts can be discredited by the tape. Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). In my opinion, the video at issue in this case shows a bullying law enforcement officer arresting a citizen who dared question the officer’s authority *899 and who was not under the influence of drugs or alcohol.
Put simply, there was no arguable probable cause to arrest Jenkins. As the majority states, for probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances. Wood v. Kesler, 323 F.3d 872, 878 (11th Cir.2003). In this case, Jenkins was cited for DUI/Drugs. Jenkins argues, and I agree, that no reasonable person or officer could, upon viewing the video, believe that Jenkins was staggering or slurring his speech. The majority ignores the combative nature of Gaither immediately after Jenkins asked Gaither whether he was certified to administer a field sobriety test. In my opinion, Jenkins’ question, a reasonable one, was the proximate cause of his arrest.
The majority cites four circumstances that they find support their holding that Gaither and Acosta had arguable probable cause that Jenkins violated Georgia law. However, most of the reasons listed by the majority fail to account for the totality of the circumstances leading up to the arrest. Specifically, the majority states that Jenkins’ inconsistent statements regarding his consumption of alcohol supports a finding of probable cause. A closer examination of his statements show that there is no inconsistency. Initially Jenkins was asked whether he had anything to drink that night and he responded that he had not. Later, Jenkins states that he had consumed alcohol about four hours before the time he was pulled over. This questioning occurred shortly after 10 p.m. Four hours earlier would mean that he consumed an alcoholic beverage around 6 p.m.[1] Accordingly, there is no inconsistency in his statements because he had not consumed any alcohol that night. Context and temporal specificity matter. The colloquy continued:
GAITHER: Okay. Do you drink any alcoholic beverages?
JENKINS: Ido.
GAITHER: You do? Okay. So when was the last time you consumed alcohol?
(Jenkins looks at watch.)
JENKINS: About four hours ago. GAITHER: About four hours ago? JENKINS: Uh-huh.
GAITHER: Okay. And where were you when you consumed this alcoholic beverage?
JENKINS: Up in DeKalb County.
GAITHER: In DeKalb County? Okay. Do you know where you are right now?
JENKINS: Yeah.
GAITHER: Where are you now?
JENKINS: I’m in Butts County.
GAITHER: (Belligerently)[2] You’re in Butts County. And my question to you is why when you know you’ve consumed alcohol, why are you out here driving on the — on the roadway?
JENKINS: Why don’t you ask me why I might have been weaving?
GAITHER: I’m — no, no, no, no, no. I’m asking the questions, so you understand me. Okay?
JENKINS: Okay.
GAITHER: And I’ll just ask the same question. Why would you have con *900 sumed alcoholic beverages while you’re out here on the roadway driving?
JENKINS: Because I’m working.
GAITHER: Okay. But you know that you—
JENKINS: Uh-huh.
GAITHER: — should not be out here on the roadway, especially with a commercial driver — even though you’re not in a commercial vehicle—
JENKINS: Uh-huh.
GAITHER: — but you’re out here on the roadway—
JENKINS: Uh-huh.
GAITHER: — while consuming — [emphasis added]
JENKINS: Did you—
GAITHER: — alcoholic beverage?
JENKINS: Wait a minute.
GAITHER: Like I said, I’m asking the questions. Plain and simple. Okay?
JENKINS: Okay.
GAITHER: I just asked a question.
JENKINS: Okay.
GAITHER: That’s all I did was ask you a question. Again — I’m not going to keep repeating myself — why are you consuming alcoholic beverages driving out here on the roadway?
JENKINS: Am — am I under suspicion of anything?
GAITHER: I just asked a question.
JENKINS: I’m not going to answer your question.
GAITHER: You don’t want to answer any questions?
JENKINS: No.
GAITHER: Hold tight right there. The defendant might be going to jail [Emphasis added]. [R. 23 (video) ].
The majority ignores the inconsistencies among the officers’ later reports and depositions and the video and blood tests. For instance, in his deposition, Gaither stated that Jenkins slurred the word “speeding” while Jenkins was still in the car. [Gaither Depo. at 125-26], He then noted that, after reviewing the video, he “didn’t observe slurred speech” when Jenkins responded to his question about whether he had been drinking. Additionally, Gaither testified that Jenkins “swayed” when checking his watch to determine how long it had been since his last drink, indicating unsteadiness, but didn’t list that in his report. [Gaither Depo. at 71]. I believe that, in light of the inconsistencies between the report and the deposition, and the ultimate fact that Jenkins’ blood tests came back negative for alcohol, a fact finder could find that Gaither exaggerated and/or falsified critical parts of his report to justify the arrest. To reiterate: the video of the incident strongly undermines the officers’ rationale for the arrest. In Scott v. Harris, the Supreme Court stressed, “The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.” Scott at 380-81, 127 S.Ct. 1769.
For the aforementioned reasons, I believe a jury in possession of all relevant facts, to include cross examination of the Defendants, could find that (1) Jenkins was not staggering nor slurring his speech; (2) Gaither did not observe glassy eyes nor smell alcohol; and (3) Gaither did not see Jenkins weave. These conclusions are strongly indicated by the negative blood test results. To the extent that Gaither relies on Jenkins’ refusal to submit to the field sobriety tests, I believe a jury could find that Jenkins’ refusal was justified considering that Gaither was not certified. To the extent that the facts call Gaither’s actions into question, I believe they give the lie to Acosta’s reports of smelling alcohol and seeing glassy eyes at the scene.
*901 For the foregoing reasons, I respectfully dissent.

. I believe that it is worth noting that the sun was still up at the time he consumed the alcoholic beverage earlier that day, but had set by the time of his arrest. According to the U.S. Naval Observatory, sunset occurred at 7:06 p.m. on October 13, 2009, in Atlanta, Georgia. See U.S. Naval Observatory Sun and Moon Data for October 13, 2009, http:// aa.usno.navy.mil/cgibin/aa_pap.pl.

. Gaither continues his "in your face” confrontation style throughout this exchange.