**Dontavius CHANCY, Plaintiff-Appellant,**

v.

**Jeff BRUNO, in his individual capacity, Defendant-Appellee.**

No. 15-14077

United States Court of Appeals, Eleventh Circuit.

(February 13, 2017)

Ralph Goldberg, Goldberg & Cuvillier, PC, Tucker, GA, for Plaintiff-Appellant

Kenneth Drew Jones, Stephen James Cohen, Jeffrey R. Daniel, Hall Booth Smith, PC, Atlanta, GA, for Defendant-Appellee

Before WILSON and JILL PRYOR, Circuit Judges, and BUCKLEW,* District Judge.

PER CURIAM:

Plaintiff Dontavius Chancy appeals the district court's grant of summary judgment to Defendant Detective Jeff Bruno on Chancy's 42 U.S.C. § 1983 claim alleging malicious prosecution. On appeal, Chancy challenges the district court's ruling that despite the fact that the warrant affidavit Bruno presented to the magistrate judge was obviously insufficient to establish probable cause, Bruno was entitled to qualified immunity because he had arguable probable cause to arrest Chancy. Chancy also challenges the district court's conclusion that Bruno did not unlawfully exclude pertinent information from his warrant affidavit. After careful review, we affirm the district court's grant of summary judgment on the ground that Chancy failed to establish a prima facie case for malicious prosecution.

## I. BACKGROUND

Chancy, a black man, was leaving the Depot Bar when he was involved in an altercation with three white men—Russell Payne, Brian Ragan, and Michael Jones. Bruno was assigned to investigate the inci-

---

* Honorable Susan C. Bucklew, United States District Judge for the Middle District of Flori-da, sitting by designation.

dent. In the course of his investigation, Bruno interviewed all four men, who each gave him differing versions of the event. Payne, Ragan, and Jones described Chancy as the aggressor who instigated the physical confrontation by pulling a gun on them, while Chancy stated that the other men instigated it.

Ragan told Bruno that the altercation began with comments from either Chancy or Payne. According to Ragan, while the conflict was still verbal, Chancy went to his car, pulled out a gun, and touched Payne's head with the gun. Ragan then ran over to Chancy and Payne, and the fight became physical. Ragan did not indicate who threw the first punch, but he unequivocally told Bruno that Chancy pulled his gun on Payne prior to the altercation becoming physical. Ragan explained that he endeavored, successfully, to get the gun away from Chancy. Ragan admitted that Payne used racial slurs in speaking to Chancy, but it was unclear from the interview if Payne used racial slurs before or after Chancy pulled his gun.

Payne's story was somewhat different than Ragan's. According to Payne, Chancy said something unintelligible to Payne and Ragan in the parking lot. Ragan then yelled something at Chancy, and Payne walked over to Chancy's car to calm him down. But by then, according to Payne, Ragan was already at the car. With Payne and Ragan at the car, Chancy pushed his car door—which was already open—in such a way that the door knocked Payne over. Jones then pulled Payne back, and Payne witnessed Chancy pull the gun out. Ragan then hit the car door, causing Chancy to fall, but Chancy got back up and placed the pistol almost directly on Payne's forehead. From here, Ragan and Payne's stories converge: Ragan hit Chancy with the car door causing him to drop the gun. Ragan then picked up the gun

and removed the ammunition. Payne denied ever using a racial slur or spitting on Chancy.

Jones's account also differed from Ragan's and Payne's stories. Jones saw Payne, followed by Ragan, approach Chancy's car. Jones noted that the men were trading racial slurs. As Payne and Ragan were shouting with Chancy, Jones attempted to pull Payne and Ragan back. As Jones attempted to push Payne and Ragan away from Chancy, Chancy stuck his gun in Jones's face, touching him with the gun. Jones then heard the gun hit the floor and saw Ragan attempting to remove the gun's magazine. Jones said he might have recalled Payne hitting Chancy after Chancy was disarmed.

Chancy's version of events diverges substantially from the other men's statements. Chancy told Bruno that the altercation began when Chancy heard one of the men say that he was ready to "kick some ass." When Chancy looked over at the men, one of them said "tonight[']s not a good night to be lookin' at me." The men then followed Chancy to his car, leading Chancy to pull his gun out from under the seat of his car and place it on top of the seat. One of the men then spat on Chancy and used a racial slur. At this point, Chancy reached for the gun, but someone closed the car door on his arm. Chancy went to the ground and reached for the gun again, but then someone else grabbed the gun and "[t]hrew it against the wall." The men proceeded to hit Chancy.

After the interviews, Bruno filed affidavits for arrest warrants for Ragan, Payne, and Chancy. Bruno sought arrest warrants for simple battery for Ragan and Payne and pointing of a gun at another without justification (pursuant to O.C.G.A. § 16–11–102) for Chancy. After identifying the location and approximate time of the

events, the affidavit for Chancy read in its entirety:

DONTAVIUS CHANCY DID POINT A GUN AT RUSSEL [sic] PAYNE AND BRIAN RAGEN [sic] WHILE FIGHT- ING IN THE PARKING [LOT] OF THE DEPOT BAR. MR. CHANCY ALSO POINTED THE GUN AT MI- CHEAL [sic] JONES WHILE HE WAS TRYING TO BREAK THE FIGHT UP.

Chancy was not immediately arrested. After a few months, during which Bruno attempted to convince Chancy to drop the charges against Payne and Ragan (so the charges against Chancy could in turn be dropped), Chancy turned himself in for arrest. Bruno did not arrest Chancy and was not present during the arrest. All charges eventually were dropped against each individual. During his deposition in this case, Bruno testified concerning Chancy: "He was defending himself. I don't doubt that he was defending himself that night. But I'm going by the law that says pointing a gun at another unwillfully there[.]"

Chancy subsequently filed suit against Bruno, Ragan, Payne, and Jones.[1] Against Bruno, Chancy pursued 42 U.S.C. § 1983 claims for false arrest and denial of access to courts. At issue on appeal is Chancy's false arrest claim, which the district court treated as a malicious prosecution claim.[2] In the district court, Chancy pursued two different legal theories. First, Chancy alleged that Bruno violated his Fourth Amendment rights by submitting an affidavit to the magistrate judge seeking a warrant for Chancy's arrest that was obviously insufficient to establish probable cause. On summary judgment, the district court rejected this theory, concluding that Bruno was entitled to qualified immunity because he in fact had arguable probable cause to arrest Chancy. Second, Chancy alleged that Bruno violated his Fourth Amendment rights by intentionally omitting material information from the affidavit seeking the warrant. The district court rejected this theory as well, finding that none of the information allegedly excluded from the affidavit was clearly material to whether the warrant should issue. Chancy now appeals.

## II. STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgment de novo, applying the same legal standards used by the district court." *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). We view the evidence and all factual inferences arising from the evidence in the light most favorable to the nonmoving party. *See id.* Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Mere speculation is insufficient to create a genuine dispute of material fact. *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## III. DISCUSSION

Although Chancy's original complaint alleged that Bruno committed the constitutional tort of false arrest, the district court construed Chancy's claim as one for malicious prosecution. On appeal, Chancy does not argue that the district court erred in doing so, nor would any such argument bear fruit: where confinement is "imposed pursuant to legal process," the "common-

1. This appeal concerns only Chancy's claims against Bruno.

2. Chancy does not appeal the district court's grant of summary judgment to Bruno on his access to courts claim.

law cause of action for malicious prosecution"—rather than "the related cause of action for false arrest or imprisonment"— is the appropriate tort law analogue. *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). "Obtaining an arrest warrant is one of the initial steps of a criminal prosecution. Under these circumstances (that is, where seizures are pursuant to legal process), we agree with those circuits that say the common law tort most closely analogous to this situation is that of malicious prosecution." *Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996) (internal quotation marks omitted). Because Chancy was arrested pursuant to a warrant, the district court properly evaluated his false arrest claim as a malicious prosecution claim.

"To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). "[F]or purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution include[ ]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 881–82.

The district court resolved this case on the predicate issue of whether Bruno committed an unreasonable seizure. Chancy argued to the district court that Bruno's actions led to his unreasonable seizure in two ways. First, Chancy argued that the affidavit Bruno used to obtain the arrest warrant was so lacking in substance that "a reasonably well-trained officer in [Bruno's] position would have known that [the] affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Second, Chancy argued that Bruno intentionally omitted material information from the affidavit in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).[3]

The district court rejected both of Chancy's arguments. On the first issue, the district court determined that Bruno was entitled to qualified immunity, explaining that the fact that Bruno had arguable probable cause to arrest Chancy immunized him from liability even if the affidavit was facially deficient. On the second issue, the district court also ruled that Bruno was entitled to qualified immunity, finding that none of the information Chancy alleged Bruno intentionally omitted from the affidavit was clearly material to whether the warrant should be issued. Concluding that there was no unlawful seizure under these circumstances, the district court granted summary judgment to Bruno on Chancy's malicious prosecution claim.

We need not review the district court's reasoning with regard to qualified immunity. Instead, this case is easily resolved on the alternate ground that Chancy did not establish a prima facie case for malicious prosecution.[4] A necessary element of a ma-

---

**3.** In *Franks*, the Supreme Court "held that the Constitution prohibits an officer from making perjurious or recklessly false statements in support of a warrant." *See Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994) (citing *Franks*, 438 U.S. at 156, 98 S.Ct. 2674).

**4.** "[T]his Court may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

licious prosecution claim raised under § 1983 is that the defendant instituted or continued a criminal prosecution "with malice and without probable cause." *Wood*, 323 F.3d at 882. Here, the undisputed facts indicate that Bruno had probable cause to arrest Chancy.

Under Georgia law, "[a] person is guilty of a misdemeanor when he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded." O.C.G.A. § 16–11–102. "Probable cause exists where the facts and totality of the circumstances, as collectively known to the law enforcement officers and based on reasonably trustworthy information, are sufficient to cause a person of reasonabl[e] caution to believe an offense has been or is being committed." *Parker v. Allen*, 565 F.3d 1258, 1289 (11th Cir. 2009) (internal quotation marks omitted).

Bruno had probable cause to believe that Chancy had pointed his gun at one or more people without justification. Although their stories varied in the particulars, Ragan, Payne and Jones each told Bruno that Chancy pointed his gun at at least one of them without justification. Ragan told Bruno that Chancy pointed his gun at Payne amid a verbal altercation that had not yet turned physical. Payne told Bruno that after Chancy initiated physical contact with him, Chancy pulled out his gun before anyone responded. Jones told Bruno that while the altercation was still merely verbal, he attempted to pull Ragan and Payne away from Chancy. Chancy then pointed his gun at Jones, who had not been involved in the altercation. Together, the testimony of the three witnesses was sufficient to cause a person of reasonable caution to believe that Chancy had pointed his gun at another without justification in violation of O.C.G.A. § 16–11–102. *See Taylor v. State*, 276 Ga.App. 424, 623 S.E.2d 237,

238 (2005) (concluding that a verbal altercation does not provide legal justification for pointing a gun at a person).

This conclusion is in no way undermined by Bruno's statement—elicited at his deposition, well after he applied for the warrant—that he thought Chancy was defending himself on the night in question. "[T]he existence of probable cause is determined by objective standards. It is not determined solely on the basis of what ... officers think." *United States v. Roy*, 869 F.2d 1427, 1433 (11th Cir. 1989). The witnesses' statements provided Bruno with an objective basis at the time to apply for an arrest warrant, notwithstanding Bruno's subjective assessment of the situation months after the fact. Nor did the fact that Chancy disagreed with the other men's versions of events divest Bruno of probable cause; indeed, officers would rarely have a basis to make an arrest if a suspect's assertion that he committed no crime necessarily eliminated probable cause.

Because the undisputed evidence shows that Bruno did not act "without probable cause," Bruno cannot be liable for the tort of malicious prosecution. *Wood*, 323 F.3d at 881–82 (holding that an officer could not be liable for malicious prosecution where he had probable cause to arrest the plaintiff for reckless driving). Thus, the district court did not err in granting summary judgment on that claim.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to Bruno.

**AFFIRMED.**