[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11197

Non-Argument Calendar

_____

ERIC GRIFFIN,

Plaintiff-Appellant,

*versus*

ANTHONY VENTRIERE,

ROBERT BELL,

Detectives,

SHERIFF ORANGE COUNTY, FLORIDA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cv-00737-WWB-LHP

_____

Before WILSON, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

We vacate and withdraw our previous opinion dated December 28, 2022, 2022 WL 1797224, (11th Cir. Dec. 28, 2022), and substitute the following opinion.

Eric Griffin appeals the district court's order granting summary judgment to Detectives Anthony Ventriere and Robert Bell (Detectives), and Sheriff John Mina based on qualified immunity, in Griffin's 10-count malicious prosecution and false arrest suit. After careful review of the record, we affirm.

## I.    Factual Background

Trevor Glover reported to the Orange County Sheriff's Office that two men fired handguns at him as he walked towards his apartment building on April 27, 2016. Ventriere responded to the scene and corroborated Glover's story. At the scene, Glover advised Officer Robert Fischer that "he has never met or saw either of the men who attacked him, and they did not say anything or attempt to take any of his possessions." Glover expressed his belief that the two men were friends of Gino Nicholas, his girlfriend's brother, who had been shot and killed, and that Nicholas's friends

thought Glover was friendly with Nicholas's shooter. Glover described the perpetrators as two black men, one under six feet tall and the other six feet and two inches tall.

Several hours after the initial interviews, Glover notified Ventriere that he remembered more information and could identify the two suspects. Glover then identified Appellant Griffin as the suspect who shot at him at close range. It is undisputed that Griffin is six feet and nine inches tall. Thereafter, Glover identified Griffin in a photograph lineup, stating he was "absolutely sure" Griffin was the individual who shot at him. Glover also informed Ventriere of a text message Griffin sent to Glover's girlfriend on April 25, 2016, in which Griffin indicated that Glover refused to look him in the eye at the night club the previous day.

The arrest affidavit that led to Griffin's arrest warrant did not include Glover's initial statement verbatim, nor the height discrepancy, but did state, at first "Mr. Glover was unable to provide any further information at that time." The affidavit stated that Glover was able to remember the shooters after the adrenaline and pain wore off. It also included that Glover had selected Griffin from a photograph lineup, the text messages Griffin sent to Glover's girlfriend, and an eyewitness account that the shooters fled in a Dodge Charger. A Florida judge signed an arrest warrant and Griffin was subsequently arrested by a warrant unit.

During his post arrest interview, Griffin admitted that he had rented a Dodge Charger and did not know if he returned it before or after the shooting occurred. Ventriere confirmed the

following week, based on information he was unable to obtain the night he interviewed Griffin, that the car was returned before the shooting. After FLDE testing of the weapon Griffin had on his person at the time of arrest, it was confirmed it was not the same gun used in the shooting. Griffin gave an alibi that surveillance video would show he was at his parents' house at the time the shooting occurred, but Ventriere could not remember what he did with the information Griffin gave him about his parents' surveillance camera. Ventriere completed the investigation after he received search warrants for Griffin's phone days later. Griffin was later released.

Griffin filed a ten-count complaint against Ventriere, Bell, and Sheriff Mina. [1] Counts I and II are claims against Ventriere and Bell for false arrest under 42 U.S.C. § 1983. Counts III and IV are claims against Ventriere and Bell for malicious prosecution under 42 U.S.C. § 1983. Counts V, through VIII are Florida law claims against Ventriere, Bell, and Mina for false arrest. Counts IX and X are Florida law claims against Ventriere and Bell for malicious prosecution.

The district court granted summary judgment on qualified immunity grounds, concluding that Griffin was arrested pursuant to a valid arrest warrant and therefore cannot assert false arrest, finding that probable cause or arguable probable cause would have

---

[1] Sheriff Mina was sued in his official capacity as the Sheriff of Orange County for the actions for Ventriere and Bell.

existed even if the omissions were included in the affidavit. Griffin timely appealed.

## II.    Standard of Review

We "review[] *de novo* a district court's disposition of a summary judgment motion based on qualified immunity, applying the same legal standards as the district court." *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). All issues of material fact are resolved in favor of the plaintiff, and then, under that version of the facts, the legal question of whether the defendant is entitled to qualified immunity is determined. *Id.*

To receive qualified immunity, a public official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). We must determine "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006). If the official was acting within his discretionary duties with respect to the claims raised in the complaint, the burden shifts to the Plaintiff to prove "(1) the defendant[s] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

## III.    Discussion

Griffin argues on appeal that summary judgment was improper here for two overarching reasons. First, he argues genuine issues of material fact exist in two instances: (1) as to whether a judge would have signed a warrant if the omitted information was included, and (2) as to the timing of Griffin's arrest. Second, he argues that qualified immunity cannot attach because the defendants withheld exonerating evidence from the arrest warrant and failed to investigate such evidence. We consider each issue in turn.

Griffin first contends that a jury should decide whether the omissions from the arrest affidavit would cause a judge not to sign the warrant. He is mistaken. The standard for determining the existence of probable cause is the same under both Florida and federal law. *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998). The Florida Supreme Court has held that when analyzing alleged omissions from probable cause affidavits, "(1) *the reviewing court* must determine whether the omitted material, if added to the affidavit, would have defeated probable cause, and (2) *the reviewing court* must find that the omission resulted from intentional or reckless police conduct that amounts to deception." *Johnson v. State*, 660 So.2d 648, 656 (Fla. 1995) (emphasis added). Further, the prohibition of police officers knowingly making false statements in an arrest affidavit applies when the resulting affidavit is "insufficient to establish probable cause" without an officer's false statements. *United States v. Kirk*, 781 F.2d 1498, 1502 (11th Cir. 1986).

Here, even if the affidavit included Glover's statement at the scene, it nevertheless would not defeat the probable cause already

established in the affidavit.  The affidavit states that Glover remembered who the perpetrators were hours after leaving the scene, and that the detectives questioned him on how he was able to remember additional information and includes Glover's response that after the pain and shock wore off, he was able to remember.  It also includes multiple text messages from Griffin that suggest motive, information about the Glover picking Griffin out of a photo lineup, and an independent eyewitness statement that the perpetrators fled in a Dodge Charger, which bolsters Glover's later statement that Griffin was driving a Dodge Charger around the time of the incident to support a finding of probable cause.  This information so strongly supports a finding a probable cause and explains the discrepancy between the statement at the scene and the statement hours afterwards, that the inclusion of Glover's statements at the scene would not defeat it.

Griffin also argues that his false arrest claim was wrongly dismissed because there are genuine issues of material fact as to the timing of the arrest.  However, because Griffin was arrested pursuant to a valid arrest warrant, and all questioning by the detectives occurred subsequent to the lawful arrest, there are no material issues of fact and his false arrest claim was properly dismissed.

Second, Griffin maintains that arguable probable cause does not exist because reasonable officers in the same circumstances could not have believed that probable cause existed as to Griffin. To establish a federal malicious prosecution claim under § 1983, Griffin must prove a violation of his Fourth Amendment right to

be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution. *Wood v. Kessler*, 323 F.3d 872, 881 (11th Cir. 2003). The elements of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 882.

Here, Griffin alleges that the detectives' disregard of Glover's initial statement that he had never met the shooters and reliance on the subsequent statement where Glover identifies Griffin as the shooter are enough to defeat probable cause. To determine if probable cause, or arguable probable cause, exists with respect to a malicious prosecution claim, the court looks to the crimes charged in the arrest warrant. *Williams v. Aguirre*, 965 F.3d 1147, 1163–64 (11th Cir. 2020). To succeed, Griffin must also establish "(1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Id.* at 1165. Griffin cannot meet this burden, however, because the legal process justifying his seizure was proper. Based on the experience and explanations of the detectives, sufficient probable cause existed.[2]

---

[2] Griffin also argues that qualified immunity is improper because the detectives failed to investigate readily available exonerating evidence. This argument fails because the evidence Griffin relies on was obtained *after* his lawful arrest and was investigated in a timely manner.

Because the false arrest claims were properly dismissed and the detectives demonstrated probable cause for the remaining malicious prosecution claims, we **AFFIRM.**

**AFFIRMED.**