[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11918

_____

D.C. Docket No. 03-03002-CV-CAP-1

RICHARD KJELLSEN,

Plaintiff-Appellee,

versus

TERRY MILLS,
WILLIAM H. WALL, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 21, 2008)**

Before HULL and PRYOR, Circuit Judges, and MOORE,* District Judge.

MOORE, District Judge:

_____

*Honorable K. Michael Moore, United States District Judge for the Southern District of
Florida sitting by designation.

This is an interlocutory appeal from the district court's denial of qualified immunity to Defendants-Appellants, crime lab officials and employees, in connection with the testing of Plaintiff-Appellee Richard Kjellsen's ("Kjellsen") blood samples to determine his blood alcohol level. After review and oral argument, we conclude that the facts alleged by Kjellsen, viewed in the light most favorable to him, do not show a violation of constitutional rights. Accordingly, we REVERSE and REMAND for the district judge to grant qualified immunity to Defendants-Appellants.

## I. BACKGROUND

On April 21, 2000, Kjellsen was arrested and issued traffic violations for driving under the influence ("DUI"), driving without a license, and driving a vehicle with a broken headlight. In connection with the arrest, samples of Kjellsen's blood were taken and delivered to the Division of Forensic Sciences (the "Crime Lab") of the Georgia Bureau of Investigation ("GBI"). On May 10, 2000, GBI Crime Lab toxicologist Amy Burden tested Kjellsen's blood. In accordance with GBI policy, Burden performed two blood alcohol level tests on the blood, yielding raw test results of .1016 and .1021 grams of alcohol per 100 ml. Truncating the lower test result to two decimal places, in accordance with then-GBI policy, Burden reported in the Official Report that Kjellsen had a blood

2

alcohol concentration of .10 grams per 100 ml.

Based on the blood test results in the Official Report, the Forsyth County Solicitor's written accusation charged Kjellsen with driving with a blood alcohol concentration of .10 or higher in violation of O.C.G.A. § 40-6-391(a)(5), i.e., a "per se DUI." In a separate count, the Forsyth County Solicitor's accusation also charged Kjellsen with a violation of O.C.G.A. § 40-6-391(a)(1), or a "Less Safe DUI," which only requires a showing that a defendant was intoxicated to some degree and was unfit to drive as a result; no specific blood alcohol level is required.

About a year after the initial test results and in preparation for his criminal trial, Kjellsen requested that the Crime Lab release the blood samples to his expert witness for independent testing. On April 17-18, 2001, in accordance with GBI policy, which requires additional tests prior to releasing a sample for independent testing, Burden performed additional blood alcohol level tests on Kjellsen's blood. The tests results yielded a blood alcohol content of .0958 and .0966. Although these results were below the level required to prove a per se DUI, the GBI Crime Lab did not disclose the results to the prosecuting attorney or to the defense.

The Crime Lab decided not to release Kjellsen's blood samples to his expert for independent testing citing the requirement of GBI's Division of Forensic

Sciences Operations Manual that evidence not be released for independent testing to anyone without a laboratory or testing facility. However, the trial court later ordered the GBI Crime Lab to release the samples. Prior to releasing the samples and in accordance with GBI policy, the GBI Crime Lab again tested the samples yielding results of .0956, .0984, .0954 and .0988. Again, the GBI Crime Lab did not disclose these test results to the prosecuting attorney or to the defense. Kjellsen's independent testing of the blood yielded a blood alcohol content of .0955.

At Kjellsen's DUI trial, the prosecutor called Burden, the GBI toxicologist who performed the tests on Kjellsen's blood, who testified as to only the initial test results included in the Official Report. The arresting officer also testified for the prosecution. After the defense presented its independent test results and its case, the State called Dr. Robert Brown as a rebuttal witness. On cross examination, Dr. Brown acknowledged that the GBI Crime Lab had retested the blood samples, and disclosed those results for the first time. Prior to Dr. Brown's cross examination testimony, the GBI Crime Lab had never revealed to the prosecutor or to the defense that the Crime Lab retested Kjellsen's blood.

After hearing Dr. Brown's testimony, the state court judge granted the defense's Motion for Directed Verdict as to the per se DUI charge and gave a

4

curative instruction directing the jury to disregard all testimony as to any blood tests. However, the trial proceeded on the remaining charges. Ultimately, the jury acquitted Kjellsen on the less safe DUI charge, but found him guilty of the charges for driving without a license and driving a vehicle with a broken headlight.

After the criminal trial ended, Kjellsen brought this § 1983 claim in Federal Court alleging that GBI Crime Lab officials and employees had violated his Fourth and Sixth Amendment rights by failing to reveal the retest results. Kjellsen alleges that, through this failure to reveal exculpatory evidence, the GBI Crime Lab officials and employees subjected him to malicious prosecution on the per se DUI charge and denied the defense its right to call witnesses and present evidence associated with the unrevealed exculpatory evidence.

## II. STANDARD OF REVIEW

On an interlocutory appeal from the denial of qualified immunity, this Court conducts a *de novo* review. Tinker v. Beasley, 429 F.3d 1324, 1326 (11th Cir. 2005). When reviewing the denial of a motion for summary judgment on qualified immunity grounds, this Court views the facts in the light most favorable to the plaintiff. Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007). This Court accepts the plaintiff's version of the facts "and then answer[s] the legal question of whether [the d]efendants are entitled to qualified immunity under that

5

version of the facts." West v. Tillman, 496 F.3d 1321, 1326 (11th Cir. 2007).

## III.  DISCUSSION

Qualified immunity protects public employees performing discretionary functions[1] from the burdens of civil trials and from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007).  Qualified immunity "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

When a public employee seeks summary judgment based on qualified immunity, "courts apply a two-step test to determine whether qualified immunity is appropriate.  First, '[a] court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" Andujar, 486 F.3d at 1202–03 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "When a court answers this question affirmatively, the

---

[1]In this appeal, the parties do not dispute that Defendants-Appellants were performing discretionary functions; however, this was the subject of an earlier interlocutory appeal.  See Kjellsen v. Mills, 209 Fed. Appx. 927 (11th Cir. 2006).

6

court moves to the second step, which is to consider whether the constitutional right was 'clearly established' on the date of the violation." Id.

### A. Constitutional Violations

### 1. Fourth Amendment Claim

First, Kjellsen asserts a claim that Defendants-Appellants violated his Fourth Amendment right to be free from malicious prosecution. This Court "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." Id. at 882.

To prove a § 1983 malicious prosecution claim, under federal law and Georgia law, a plaintiff must show the following: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Wood, 323 F.3d at 881–82. Because lack of probable cause is a required element to prove a § 1983 claim for malicious

prosecution in violation of the Constitution, the existence of probable cause defeats the claim.  See Wood, 323 F.3d at 881–82; Carey v. City of Fall River, 870 F.2d 40 (1st Cir. 1989) ("Because there was no clear lack of probable cause, defendants cannot be held liable for violating plaintiff's substantive due process rights on a malicious prosecution theory.") (citation omitted).

"Probable cause exists when 'the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense.'"  Miller v. Harget, 458 F.3d 1251, 1259 (11th Cir. 2006) (citing Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)). Kjellsen does not challenge the scientific methods used to obtain the initial .10 blood alcohol level result, nor does he challenge that the GBI Crime Lab obtained an initial .10 blood alcohol level using those methods.  Accordingly, based on the results of the initial blood alcohol tests reported in the Official Report, the Court concludes that Defendants-Appellants and the Forsyth County Solicitor, at the time Kjellsen was initially charged with a per se DUI violation, had "reasonably trustworthy information" which "would cause a prudent person to believe" that Kjellsen had committed a per se DUI violation.  See Id.

8

Kjellsen argues, however, that, after the GBI Crime Lab retested the blood samples and obtained results showing a blood alcohol level below the per se DUI threshold, probable cause no longer existed for the State to continue its prosecution on the per se DUI charge. Probable cause is required to *continue* a prosecution, not just to arrest a defendant or to institute a prosecution. See Wood, 323 F.3d at 882 ("a criminal prosecution . . . continued . . . without probable cause" can be a malicious prosecution.); Kinzer v. Jackson, 316 F.3d 139, 143–44 (2d Cir. 2003) ("A malicious prosecution claim can rest on a prosecution that is continued notwithstanding the discovery of information that exculpates the defendant"); Sanders v. English, 950 F.2d 1152, 1163 (5th Cir. 1992) ("[d]eliberately concealing or deliberately failing to disclose exculpatory evidence . . . can . . . form the basis for an inference that a defendant police officer acted with malice in . . . maintaining a prosecution"). Therefore, if the retest results negated probable cause, then Kjellsen might be able to prove a malicious prosecution claim.

Both Kjellsen and Defendants-Appellants submitted to the district court scientific articles showing that blood alcohol levels in stored blood samples change over time. These articles indicate that in most instances the blood alcohol level decreases in storage over time. However, they also indicate that occasionally

9

blood alcohol levels in blood samples can increase over time. The district court concluded that, because the blood alcohol levels could have increased or decreased, there existed a question of fact as to whether the later test results negated probable cause. Dist. Ct. at 12–13.

We disagree. The undisputed facts in the record allow us to resolve this issue as a matter of law. Based on the undisputed fact that blood alcohol levels in stored blood samples most often decrease over time, it is most "probable" that the lower retest results in this case were the result of a normal decrease over time. Further, the general trend shown from plotting all the test results, as obtained from the same scientific methods, over time indicates that the blood alcohol level was decreasing. Because it is most probable that the lower retest results were due to a natural decrease in the blood alcohol level of a blood sample over time, "probable" cause to believe Kjellsen's blood alcohol was above the per se DUI level at the time that Kjellsen was driving the vehicle was not negated by the retest results. Further, because blood alcohol levels generally change over time when a blood sample is stored, a reasonably prudent person might conclude that the earliest test result was the most accurate.

Accordingly, the Court concludes that probable cause existed at the time the per se DUI charge was initiated against Kjellsen, and the later retest results did not

10

negate that probable cause.  Therefore, Kjellsen cannot state a claim for malicious prosecution in violation of the Fourth Amendment.

### 2.    Sixth Amendment Claim

Kjellsen also asserts a claim that Defendants-Appellants violated his Sixth Amendment right to compulsory process (i.e., Defendants-Appellants' failure to turn over the retest results allegedly deprived Kjellsen of the right to call witnesses and present evidence at trial concerning the retest results).[2]  However, a "respondent cannot establish a violation of his constitutional right to compulsory process merely by showing that [he was] deprived . . . of . . . testimony.  He must at least make some plausible showing of how [the] testimony would have been both *material* and favorable to his defense."  U.S. v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982) (emphasis added).

"In Valenzuela-Bernal, the Court imported the materiality requirement from the line of cases beginning with Brady v. Maryland, 373 U.S. 83 (1963), into compulsory process clause analysis."  Taylor v. Singletary, 122 F.3d 1390, 1394 (11th Cir. 1997) (citing Valenzuela-Bernal, 458 U.S. at 872–74).  Following the Brady line of cases, excluded evidence is material "only if there is a reasonable

---

[2]Kjellsen does not claim a Brady due process violation for failure to turn over exculpatory evidence.

11

likelihood that the testimony could have affected the judgment of the trier of fact." Taylor, 122 F.3d at 1394–95 (citing Valenzuela-Bernal, 458 U.S. at 874). Another formulation of the materiality test requires a showing that "evidence [unavailable at trial] could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Taylor, 122 F.3d at 1395 (citing Kyles v. Whitley, 514 U.S. 419, 434–35 (1995)).

Defendants-Appellants argue that, because the trial court dismissed the per se DUI charge and because Kjellsen was acquitted of the less safe DUI charge, Kjellsen cannot satisfy the materiality requirement and prove a violation of his Sixth Amendment rights. The district court rejected this argument stating, "[t]his argument is based on hindsight. Applying the materiality test at the time the alleged violation occurred rather than post-trial, this court finds there is a reasonable likelihood that the evidence regarding the subsequent tests could have affected the judgment of the jury." Dist. Ct. Order at 19.

The district court erred in holding that the materiality test should be applied at the time of the alleged compulsory process violation rather than post-trial. Such a holding is inconsistent with the Supreme Court's formulation of the materiality standard, which requires the criminal defendant to show a "reasonable probability of a different result," or, in other words, that the suppression of evidence

"undermines confidence in the outcome of the trial." Kyles, 514 U.S. at 434 (quotation marks omitted). Only at the post-trial stage can there be a "result" to be differed from or an "outcome" to be doubted.

As discussed above, the lower retest results occurred after the blood samples had been stored for almost a year and were most likely caused by the usual decrease in blood alcohol levels of blood samples over time. Accordingly, even if the defense had received the lower retest results prior to trial and had called witnesses to testify regarding the data, a reasonable jury could have convicted Kjellsen on the per se DUI charge. Instead, the state judge and jury found the evidence and arguments presented by the defense convincing enough that Kjellsen was not convicted of any DUI charge. Any additional testimony presented in Kjellsen's favor would not have achieved a better result. Further, the defense retested Kjellsen's blood prior to trial and independently found that the blood alcohol level a year after the arrest was .0955. Receiving additional test results from around the same time reflecting similar numbers would not have materially improved the information in the defense's possession. Accordingly, the retest results could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict; thus, the materiality test has not been satisfied.

13

**B. Clearly Established Law**

Because the facts alleged do not show that the Defendants-Appellants violated a constitutional right, the Court does not need to consider the secondary question of whether the constitutional right was "clearly established" on the date of the alleged violation.

## IV. CONCLUSION

Viewing the facts in the light most favorable to Plaintiff-Appellee Kjellsen, we conclude that the facts alleged do not show that Defendants-Appellants violated the Fourth or Sixth Amendments to the Constitution. Therefore, Defendants-Appellants are entitled to qualified immunity. Accordingly, we REVERSE the denial of qualified immunity by the district court and REMAND for the district court to grant Defendants-Appellants qualified immunity and enter summary judgment in their favor.

REVERSED AND REMANDED.