[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10224
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:10-cv-14348-DLG

ANDREW JOYCE,
RAQUEL CASTIEL,
TIARA FALK,
KATHERINE SAUCIER,

                                        Plaintiffs - Appellees,

versus

SHERIFF ROBERT CROWDER,

                                        Defendant,

SGT. JASON WARD,
OFFICER, MCSO R. ROMERO,
DET. CONRAD,

                                        Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 27, 2012)

Before CARNES, HULL, and MARTIN, Circuit Judges.

PER CURIAM:

Officers of the Martin County Sheriff's Office Chris Conrad, Ruben Romero, and Jason Ward (collectively, "the arresting officers") appeal a district court order denying them qualified immunity from 42 U.S.C. § 1983 claims against them alleging First and Fourth Amendment violations as well as a state law claim for false arrest. At a January 2009 protest, the officers arrested eleven environmental activists, four of whom are plaintiffs in this case, and charged them with trespassing. The plaintiffs allege that there was no probable cause for their arrest because they had no notice that they were trespassing on private property. The district court concluded that the arresting officers did not see for themselves anything that could have put the plaintiffs on notice that they were trespassing. For that reason, the court held that the arresting officers lacked arguable probable cause to arrest the plaintiffs and thus were not entitled to qualified immunity.

I.

About 25 to 40 protestors demonstrated against Florida Power & Light's "pollution and contamination" of the Barley Barber Swamp, and the sheriff's

2

office sent at least 23 deputies to the demonstration.[1]  During the demonstration,

11 protestors swam across a publicly owned canal to its west side and congregated

there.  The canal appeared to be at least a few yards wide.  A sheriff's captain

ordered Sergeant Daniel Cunningham to go to the west side of the canal in his

patrol car "just to stand by to see what was going on."

On the west side of the canal there was a cleared, grassy area that had a

heavily wooded, uncultivated brush just a few feet behind it. The owner of the

land behind the west side of the canal was the Camayen Cattle Company.  No

signs, posts, or fences denoting the company's ownership were visible from the

east side of the canal where the officers were stationed.

The protestors eventually left the canal bank and entered the brush on the

west side of the canal.  Due to the thickness of the brush, from the perspective of

the officers on the east side of the canal, some of the protestors occasionally were

not visible with the naked eye (or, at times, with the aid of a telephoto lens).[2]  No

---

[1] In our de novo review of an interlocutory appeal from the denial of qualified immunity, we "accept[] the plaintiff's version of the facts and then answer[] the legal question of whether the defendants are entitled to qualified immunity under that version of the facts." Kjellsen v. Mills, 517 F.3d 1232, 1236 (11th Cir. 2008).  The arresting officers' version of events are discussed insofar as they are necessary to understand the district court's summary judgment order and the unresolved factual determinations in this case.

[2] The plaintiffs provided the district court with a video from the January 2009 protest shot by a sheriff's detective, illustrating these details.

person warned the protestors that they were entering private property. When the sheriff's captain saw that they had entered the brush, he had another officer contact the owner of the land about pressing trespassing charges against the protestors. Around or at the same time, Sergeant Cunningham reached the west side of the canal in his patrol car, got out, and entered the brush on foot, but at an unspecified location. Traveling west, he crossed over a barbed wire fence to enter the company's property, and while there he noticed "multiple individuals walking around." He then crossed back over that barbed wire fence to head east toward the canal, again at an unspecified location. There, he met with a co-owner of the property. The co-owner told Cunningham that he wanted the protestors charged with trespassing on his property. Before the arrests were made, Cunningham told the arresting officers that the protestors were on the west side of the fence, on the Camayen Cattle Company property.[3]

The sheriff's captain then ordered the arresting officers to arrest those protestors for trespassing.[4] After the protestors swam east back across the canal,

---

[3] The record is unclear how he communicated that information, but the arresting officers assert that they heard it over the police radio.

[4] The record suggests that the captain's order to arrest the protestors for trespassing was based on Sergeant Cunningham's report.

the arresting officers followed their captain's order and arrested them.[5]

The plaintiffs then filed a § 1983 complaint against the sheriff, in his official capacity, and the arresting officers, in their individual capacities, alleging a number of claims, including violations of their rights under the First and Fourth Amendments and a state law claim for false arrest. The plaintiffs asserted that the officers arrested them to stop their protest against Florida Power & Light and to dissuade future protestors.[6]

Both sides filed motions for summary judgment. The arresting officers argued, among other things, that they were entitled to qualified immunity because, at the time of the arrest, they had arguable probable cause to arrest the protestors for trespassing. Although they did not witness the trespass, they argued that they relied on observations of their fellow officer, Sergeant Cunningham. The arresting officers submitted copies of the original arrest affidavits that charged the plaintiffs with trespass. One of those affidavits stated that Cunningham had "observed that all eleven individuals had accessed the property described as belonging to the

---

[5] The state attorney's office later dismissed the charges against the protestors because it "could not prove that [the protestors] actually trespassed on Cattle Company property."

[6] During discovery the plaintiffs learned that the arresting officers had all been previously paid by Florida Power & Light to provide private security detail, and the sheriff's office had sent at least one undercover officer to a meeting of an environmental group that was planning the January 2009 protest.

[Camayen] Cattle Company and had arrived on the west side of the aforementioned barbed-wire fence." The arresting officers also submitted Cunningham's incident report. His report stated:

> I drove my patrol car around to the west bank of the canal where the individuals entered the woods. Upon arrival I walked up to and had to cross a barb[ed] wire fence to enter [the Camayen] Cattle Company Property. While on [Camayen] Cattle Company property I observed multiple individuals walking around.

The plaintiffs responded that the arresting officers were not entitled to qualified immunity because any belief that they had that probable cause existed was eviscerated by their own observations or lack thereof. From the east side of the canal, the arresting officers saw no fence. The plaintiffs also provided sworn declarations and deposition testimony that they themselves had neither crossed nor seen a fence on the Camayen Cattle Company property. The arresting officers replied that barbed wire fence Cunningham saw was within the tree line of the brush and therefore not visible from the east side of the canal where they were. They also included a photograph showing what they argued was that fence, but it was not clear where the photograph was taken, when, or whether the fence in the photograph existed in January 2009. So, there was a dispute in the evidence about whether there was a fence and whether the plaintiffs crossed it, but there was no dispute in the evidence that

6

Cunningham, who was not named as a defendant in the present case, did tell the arresting officers that there was a fence and the protestors were on the private property side of it.

The district court first addressed whether actual probable cause existed for the plaintiffs' trespassing arrest. It held that there was a genuine issue of material fact about whether Sergeant Cunningham had told the arresting officers that the plaintiffs had crossed a barbed wire fence to enter the Camayen Cattle Company property. According to the court, Cunningham's incident report stated only that he crossed a fence and then observed several individuals walking around, not that he saw the protestors cross a fence. The district court thought that: "[a] reasonable juror could find that the disparity between Sergeant Cunningham's written report and the statements attributed to him [by the arresting officers] support Plaintiffs' allegations [of officer bias and intimidation through a fabricated arrest]. Alternately, a juror could conclude the discrepancy was merely an oversight."

The district court then considered whether the arresting officers had reasonably believed at the time of the arrest that probable cause existed, which would entitle them to qualified immunity. It held that regardless of what Sergeant Cunningham told them, the arresting officers lacked arguable

probable cause at the time of the arrest because they did not personally see any fence or postings from the east side of the canal and they were not aware of anything else that had alerted the plaintiffs that they were on private property. The district court ruled that the arresting officers were not entitled to qualified immunity.

The district court then denied the plaintiffs' motion for partial summary judgment and granted, in part, the arresting officers' and the sheriff's motions for summary judgment on other grounds for some other claims, but left standing the state law false arrest claim and the § 1983 First and Fourth Amendment violation claims against the arresting officers. The arresting officers filed an interlocutory appeal with this Court challenging the district court's denial of qualified immunity.

II.

We have jurisdiction over an interlocutory appeal of a denial of qualified immunity "to the extent that it involves issues of law rather than challenges to the sufficiency of the evidence." Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ., 347 F.3d 903, 904 (11th Cir. 2003); accord Ortiz v. Jordan, —U.S.—, —, 131 S.Ct. 884, 891 (2011) ("We clarified in Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151 (1995), that immediate appeal from the denial of summary

8

judgment on a qualified immunity plea is available when the appeal presents a 'purely legal issue' . . . ." (citation omitted)); Cottrell v. Caldwell, 85 F.3d 1480, 1485 (11th Cir. 1996) ("Accordingly, under Johnson, we lack interlocutory appellate jurisdiction over the denial of summary judgment on qualified immunity grounds where the sole issues on appeal are issues of evidentiary sufficiency. However, as clarified by Behrens[ v. Pelletier, 516 U.S. 299, 116 S.Ct. 834 (1996)], Johnson does not affect our interlocutory jurisdiction in qualified immunity cases where the denial is based even in part on a disputed issue of law."). Moreover, the "Jones decision did not affect this Court's authority to decide, in the course of deciding the interlocutory appeal, those evidentiary sufficiency issues that are part and parcel of the core qualified immunity issues, i.e., the legal issues." Cottrell, 85 F.3d at 1486.

## III.

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly

wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks omitted). In this case, it is not disputed that the arresting officers were acting within their discretionary authority.

Under our precedent, arrests made without "arguable probable cause" violate clearly established constitutional rights. Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1143 (11th Cir. 2007). However, "[q]ualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." Id. "Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern. Showing arguable probable cause does not, however, require proving every element of a crime." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010) (citations omitted). "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." Id.

"[T]o convict for violating [Florida's trespassing] statute, the State must

prove four elements: (1) the defendant willfully entered or remained on property; (2) other than a structure or conveyance; (3) without being authorized, licensed, or invited; (4) when notice against entering or remaining had been given to the defendant." K.M.B. v. State, 69 So. 3d 311, 314 (Fla. 4th Dist. Ct. App. 2011). In Florida, "[a] law enforcement officer may not make a warrantless arrest for a misdemeanor, such as this trespass, unless every element of the crime is committed in his presence." Smith v. State, 778 So. 2d 329, 330 (Fla. 2d Dist. Ct. App. 2000). However, "both the United States Supreme Court and the Florida Supreme Court have allowed the collective knowledge of the investigating officers to be imputed to each participating officer." Terrell v. Smith, 668 F.3d 1244, 1252 (11th Cir. 2012) (noting the "fellow officer rule").

In the present case, notice is the only contested issue for arguable probable cause purposes on the qualified immunity question. Under Florida law, "notice . . . is given[] either by actual communication to the offender or by posting, fencing, or cultivation as described in [Florida Statutes] . . . ." Fla. Stat. § 810.09(1)(a)(1) (emphasis added). The district court found that no arguable probable cause existed for the plaintiffs' arrest because regardless of what, if anything, Sergeant Cunningham told the arresting officers about the

11

protestors crossing a barbed wire fence on the west side of the canal, the arresting officers "acknowledge that they did not see any fence, signs, or postings nor hear any warnings [from the east side of the canal] notifying [the] Plaintiffs that they were entering private property." Relying on Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir. 2004), the district court stated "[a]n officer may not establish arguable probable cause by selectively ignoring facts that are readily available." In sum, the district court found that unless the arresting officers could see from the east side of the canal a fence on the west side of the canal they could not have reasonably believed that the plaintiffs crossed a fence (and thus received notice) before entering private property without permission.

But the inability to see a barbed wire fence through a heavily wooded brush is not selectively ignoring facts. And there is no dispute that the protestors entered that heavily wooded brush where they were, at times, not visible from the east side of the canal. And it was within that heavily wooded brush that Sergeant Cunningham reported to the arresting officers that he had seen a barbed wire fence. Therefore, the fact that the arresting officers could not see a barbed wire fence from their vantage point did not establish that they could not reasonably have believed that Cunningham had seen a barbed wire

12

fence from his vantage point on the west side of the canal. And the arresting officers were not under any obligation to drive (or swim) to the other side of the canal to verify what Cunningham told them. See Kingsland, 382 F.3d at 1229 ("We recognize . . . that a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

For these reasons, if Sergeant Cunningham told the arresting officers that he had seen the plaintiffs on the private property side of a barbed wire fence, the arresting officers would not have lacked arguable probable cause to arrest the plaintiffs simply because they could not see the fence through the brush on the west side of the canal. The district court noted that the arresting officers asserted that Cunningham had told them the plaintiffs crossed a fence, while Cunningham's later written report did not mention that the protestors had crossed the fence, only that he had.

These two accounts, however, do not conflict. One of the arresting officer's sworn arrest affidavits stated that "Cunningham was present . . . and observed that all eleven individuals . . . had arrived on the west side of the

aforementioned barbed-wire [sic] fence."[7] Cunningham's report stated that he crossed a fence to gain access to the Camayen Cattle Company property and that "[w]hile on [Camayen] Cattle Company property[,] I observed multiple individuals walking around." (Emphasis added.) This report indicates that the protestors, like Cunningham, were on the Camayen Cattle Company property side of the fence. He did not have to see the protestors actually cross the fence to see that they were on the western, or private property, side of it. Thus, Cunningham's report does not conflict with nor contradict the arresting officers' statement.

There was a genuine dispute of material fact about whether the plaintiffs crossed a fence—the plaintiffs introduced affidavits saying they did not—but there was no dispute in the evidence that Cunningham told the arresting officers that he saw the plaintiffs on the private property side of the fence. No one disputes that the arresting officers were told that. That fact establishes at least arguable probable cause for the arresting officers to believe that the protestors who swam across the canal from the east crossed the fence that was west of the canal and that marked private property.

---

[7] And the sheriff's captain testified at deposition that Cunningham provided the arresting officers with the "information . . . to establish probable cause" before the protestors' arrest.

14

The arresting officers therefore had arguable probable cause to arrest the plaintiffs for trespassing. The arresting officers are entitled to qualified immunity. The district court's decision is **REVERSED**, and we **REMAND** to the district court to enter a judgment in favor of the arresting officers on the plaintiffs' claims.