[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15515
Non-Argument Calendar
_____

D.C. Docket No. 5:10-cv-00164-MTT

JOAQUIN GONZALEZ,

Plaintiff - Appellant,

versus

BUTTS COUNTY GEORGIA,
BUTTS COUNTY SHERIFF'S OFFICE,
M. OVERBEY,
Officer, in his individual capacity,
C. A. HOTCHKISS,
Officer, in his individual capacity,
K. MUNDY,
Officer, in his individual capacity,
ANGIE WASHINGTON,

Defendants - Appellees,

JENNY N. BRENHAM, et al.,

Defendants.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____

(June 27, 2013)

Before CARNES, HULL, and JORDAN, Circuit Judges.

PER CURIAM:

Joaquin Gonzalez, formerly a high school teacher in Butts County, Georgia, was arrested and charged with enticing a child for indecent purposes. At the time of his arrest, his home was searched pursuant to a search warrant. Four days later, he was also charged with contributing to the delinquency of a minor and two counts of criminal attempt of sexual assault. A Grand Jury later returned a "no bill" on the charges, and Gonzalez was never brought to trial.

Gonzalez filed this lawsuit alleging what the district court aptly described as a "laundry list" of state and federal law claims, including claims of unconstitutional arrest and search under 42 U.S.C. § 1983, against Butts County, the Butts County Sheriff's Office, and the three arresting officers in their individual capacities.[1] The district court granted summary judgment to Butts County on the ground that a Georgia county cannot be liable under § 1983 for the actions of members of its sheriff's office and granted summary judgment to the Butts County Sheriff's Office because it is not a legal entity capable of being sued. Gonzalez does not appeal those judgments. The district court also found that all of the individual officers were entitled to qualified immunity and so granted summary

_____

[1] Gonzalez also named the students whose statements led to his arrest, but the court dismissed all of those defendants because Gonzalez failed to serve them in compliance with Federal Rule of Civil Procedure 4(m). Gonzalez does not appeal that judgment. Gonzalez also named the guardian of one of the students as a defendant. The district court dismissed without prejudice that claim, which arises solely under Georgia law.

2

judgment in their favor on the federal law claims and declined to exercise supplemental jurisdiction over the state law claims, dismissing them without prejudice. Gonzalez appeals the grant of summary judgment based on qualified immunity on his § 1983 claims that his arrest and the search of his home violated his Fourth Amendment rights.[2]

I.

On December 17, 2008 two female students from the high school where Gonzalez taught came to the sheriff's office and complained that Gonzalez was behaving inappropriately toward some of his female students. One student told an investigator that Gonzalez sent late-night text messages to another student, Bethany Washington, and that he tried to get Washington to attend social events with him outside of school. The other student told the investigator that Gonzalez had been trying to get Washington to sleep over at his house. Both students stated that they had been told second-hand that Gonzalez forced the female exchange student staying at his house, who was 16 or 17 years old, to sleep in bed with him when his wife was away. They both stated that Gonzalez looked down their shirts, and one of them stated that he also looked down the shirts of other students. Later

---

[2] Gonzalez also brought a claim of excessive force. The district court found that Gonzalez failed to establish a constitutional violation on a discrete excessive force claim. On appeal, Gonzalez does not argue that finding was incorrect, but he does argue that to the extent his excessive force claim is based on the officers lacking the power to arrest him, it should be reinstated with his false arrest claim. See Bashir v. Rockdale Cnty., Ga, 445 F.3d 1323, 1332 (11th Cir. 2006) ("[D]amages recoverable on an unlawful arrest claim include damages suffered because of the use of force in effecting the arrest.") (quotation marks omitted).

that day, Washington came to the sheriff's office and confirmed that Gonzalez sent her text messages late at night. She also stated that Gonzalez would rub her neck, arm, and shoulders and that he invited her to his house for slumber parties with the foreign exchange student who was living at his house. She added that Gonzalez told her that at slumber parties he would get drunk and swim in the pool naked.

Based on that information, Investigator Hotchkiss sought warrants for Gonzalez's arrest and for the search of his home.[3] The search warrant was signed by the magistrate judge at 5:00 p.m. on December 17, 2008. The arrest warrant was dated December 17, 2008 as well but did not indicate the time it was signed. At 5:00 p.m., Major Overbey[4] knocked on Gonzalez's door. When Gonzalez answered the door, Overbey asked if they could talk, and Gonzalez stepped outside and walked with him away from the house. Overbey told him that he had a

---

[3] There is some confusion about the order of events on December 17 because Washington's mother testified in her deposition that Gonzalez was already in custody when she and her daughter arrived at the sheriff's office. The officer who interviewed Washington, however, said the interview was completed before Gonzalez was arrested. The district court concluded that the interview must have taken place before the arrest because information that the officers got only from Washington was included in the affidavit for the search warrant, which was submitted before Gonzalez was arrested. We agree with the district court about that.

[4] There is some dispute as to whether Overbey was accompanied by other officers when he knocked on Gonzalez's door. Because we are reviewing the district court's grant of summary judgment in favor of the officers, we accept Gonzalez's version of the facts and his assertion that he was arrested by Overbey before the other officers arrived. See Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010).

warrant for his arrest and put him in handcuffs.[5]  Other officers then arrived and searched Gonzalez's home.  Gonzalez argues that the officers' actions violated his clearly established Fourth Amendment rights to be free from unlawful arrest and unreasonable search and seizure and that they are therefore not entitled to qualified immunity.[6]

"We review de novo the district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of Plaintiffs and then answering the legal question of whether Defendants are entitled to qualified immunity under that version of the facts." Case v. Eslinger, 555 F.3d 1317, 1324–1325 (11th Cir. 2009).  A public official is entitled to qualified immunity if he was performing a discretionary function and did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir.

---

[5] It is unclear whether Gonzalez was shown a copy of the arrest warrant or even if the arrest warrant had been signed by the magistrate judge when the officers completed the arrest. Because the arrest took place outside of Gonzalez's home, even if there were no warrant at all, it was constitutional as long as it was based on probable cause. See United States v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409 (1976) (holding that officers could execute a warrantless arrest of someone standing in "the threshold of [her] dwelling").

[6] Gonzalez also appears to argue that the officers subjected him to malicious prosecution, but, other than a statement that one of the officers was related to one of the witnesses making statements against Gonzalez, he makes no argument on appeal that the officers were motivated by malice.  His failure to offer any evidence that his prosecution was "with malice and without probable cause" defeats his malicious prosecution claim. See Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008) ("To prove a § 1983 malicious prosecution claim, under federal law and Georgia law, a plaintiff must show the following: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause . . .") (quotation marks omitted).

2012). Gonzalez does not dispute that the officers were acting in a discretionary capacity in carrying out the search and arrest, so the burden shifts to him to show that the officers violated a clearly established constitutional right. See id.

## II.

An arrest made without probable cause violates the Fourth Amendment. Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007). We have clarified, however, that officers are entitled to qualified immunity even if they did not have probable cause to arrest as long as they had arguable probable cause, which exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." Id. (quotation marks and alteration omitted). "Where there is at least minimal communication between different officers, the collective knowledge of the officers determines probable cause." United States v. Allison, 953 F.2d 1346, 1350 (11th Cir. 1992).

Gonzalez contends that no reasonable officer could have believed that he was guilty of the crime of enticing a child for indecent purposes, which is the crime listed on the arrest warrant. He is right. The crime of enticing a child for indecent purposes is defined in Georgia law as "solicit[ing], entic[ing], or tak[ing] any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent act." Ga. Code Ann. § 16-6-5 (2012). Because

6

Washington was 16 years old at the time Gonzalez invited her to the naked pool parties, his actions did not meet the elements of that crime. The officers knew that Washington was 16 years old; her age was listed on the search warrant and arrest warrant affidavits.

But the "validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Bailey v. Bd. of Cnty Comm'rs of Alachua Cnty., 956 F.2d 1112, 1119 n.4 (11th Cir. 1992). So long as an officer has "arguable probable cause to arrest for any offense, qualified immunity will apply." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010). The question we must answer, then, is whether the officers had arguable probable cause to arrest Gonzalez for any crime. The officers argue that at the time they arrested Gonzalez, they had arguable probable cause to arrest him for the crime of criminal attempt of sexual assault. A teacher commits the crime of sexual assault when he "engages in sexual contact with" someone enrolled at the school over whom he has "supervisory or disciplinary authority." Ga. Code Ann. § 16-6-5.1(b)(1). A person commits criminal attempt when "with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." Ga. Code Ann. § 16-4-1. We agree with the district court that the facts known to the officers at the time—particularly based on Washington's statements that Gonzalez gave her neck, arm, and shoulder rubs and invited her to

7

a pool party where he told her he would get drunk and swim naked—could lead a reasonable officer to conclude that he had probable cause to arrest Gonzalez for criminal attempt of sexual assault.

Gonzalez also contends that the officers did not complete a sufficiently thorough investigation before they arrested him and that the lack of investigation violated his rights. "Qualified immunity gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law." Kingsland v. City of Miami, 382 F.3d 1220, 1231 (11th Cir. 2004) (quotation marks omitted). In Kingsland the court denied arresting officers qualified immunity on the ground that the facts supported the conclusion that the officers "consciously and deliberately did not make an effort to uncover reasonably discoverable, material information" in the case, which dealt with a fellow police officer who had been involved in a car accident. Id. at 1230.

We agree with the district court that the investigation of Gonzalez before his arrest was not "air-tight" and more could have been done to test the students' accusations, such as asking Washington for the texts Gonzalez allegedly sent her. Unlike in Kingsland, however, there is no evidence that the officers "consciously and deliberately" did not attempt to find evidence that would have exonerated Gonzalez. The officers here had the statements of three students, which were consistent with each other and not contradicted by any other evidence known to the

8

officers.  The interviewing officer also noted that the students did not show any signs of coaching or deception.  The officers' decision to act on that information before exhausting every investigatory avenue was not plainly incompetent.  See Kingsland, 382 F.3d at 1229 ("[A] police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.") (quotation marks omitted).  They are entitled to qualified immunity for Gonzalez's arrest.

## III.

Gonzalez contends that even though the search of his home was conducted pursuant to a warrant, it was a violation of his Fourth Amendment rights because the warrant was supported by a "deliberately false affidavit."  A search warrant is void if it contains a deliberately false statement or one that was made in reckless disregard of the truth and that false statement forms the basis of the probable cause for the search.  Madiwale v. Savaiko, 117 F.3d 1321, 1326 (11th Cir. 1997).  There is no evidence that the officers misrepresented any factual statements made by Washington or any other facts.  The only statement in the affidavit that Gonzalez could possibly point to as false is the officers' legal conclusion that he had enticed a child for indecent purposes.  It is clear (and should have been clear at the time the officers completed the affidavits) that Gonzalez did not entice a child for indecent purposes.  We need not decide if the search warrant was void because Gonzalez

9

could not have committed the named crime, however, because the officers who requested the warrant and who executed the warrant are entitled to qualified immunity.

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . . [But] we have recognized an exception allowing suit when it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Messerschmidt v. Millender, 132 S.Ct. 1235, 1245 (2012) (citations omitted). "The shield of immunity . . . will be lost . . . where the warrant was based on an affidavit so lacking in indicia of probably cause as to render official belief in its existence entirely unreasonable." Id. The threshold for establishing that exception is a "high one" because "in the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause . . . ." Id. (alterations omitted).

Because of the students' statements, a "reasonably competent officer" could have requested a search warrant based on the belief that a search of Gonzalez's home would uncover evidence of Gonzalez's sexual communications with and sexual interest in his students; a "reasonably competent officer" could have

10

executed the search warrant based on the same belief.  And it was not "entirely unreasonable" for the officers to believe that that evidence would help prove that Gonzalez committed a crime, albeit not the one specified in the related arrest warrant.  See Messerschmidt, 132 S.Ct. at 1246–47.  The officers are therefore entitled to qualified immunity.

**AFFIRMED**.