[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11706
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cv-01631-RBD-KRS

TIMOTHY ALLEN DAVIS, SR.,

Plaintiff - Appellant,

versus

CITY OF APOPKA,
ROBERT MANLEY, III,
RANDALL FERNANDEZ,
NICOLE DUNN,
ANDREW PARKINSON, et al.,

Defendants - Appellees,

APOPKA POLICE DEPARTMENT, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 12, 2018)

Before MARCUS, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Timothy Allen Davis, Sr. appeals the district court's order dismissing with prejudice his claims against the City of Apopka, Florida, under Federal Rule of Civil Procedure 12(b)(6).[1]  After careful review, we affirm the dismissal in part, vacate it in part, and remand for further proceedings.

## I. BACKGROUND

This case arose out of a domestic dispute between Davis and his adult son, Timmy Davis.[2]  According to Davis's third amended complaint ("complaint"), Timmy attacked and seriously injured Davis in the family's home.  Davis attempted to put distance between himself and Timmy, but Timmy pursued him through the garage.  Davis retrieved a gun from his car while Timmy paced in the garage.  Timmy then aggressively approached Davis.  Davis fired a shot in an attempt to scare Timmy, but Timmy continued to advance, so Davis fired again, this time hitting Timmy in the chest.

Davis's wife called 911 and reported that Davis and Timmy had a confrontation and that she believed Davis had shot his son.  Minutes later, two Apopka Police Department ("APD") officers, Mark Creaser and Rafael Baez,

---

[1] The City is the only defendant that is a party to this appeal.

[2] The district court's order granting in part and denying in part the City and individual officers' motions to dismiss thoroughly sets forth the facts as alleged in Davis's third amended complaint.  We recount only what is necessary to the disposition of this appeal.

arrived on the scene; a few minutes after that, the Chief of Police, Robert Manley, III, arrived. Davis was visibly badly hurt and told the officers that he shot Timmy "because [he] beat me up and kept coming at me." Doc. 122 at 9.[3] The gun was still in Davis's pants pocket. At Manley's direction, Davis was placed under arrest.

Creaser handcuffed Davis, which caused Timmy to exclaim, "[g]et away from daddy and leave my daddy alone!" *Id.* Creaser recovered Davis's gun. Davis reiterated to the officers that he shot his son because his son had attacked and badly injured him. He explained that he needed medical attention because his head was in pain, he had double vision, and he believed he had ruptured his patella tendons in his knees. Manley radioed for paramedics and directed that Davis be sent to a different hospital than Timmy, who died of his injuries later that night.

Davis remained hospitalized for several days due to his injuries. His wife and minor child also were hospitalized as a precaution. While the whole family was hospitalized, APD officers—without a warrant and at Manley's direction—searched Davis's home and seized certain evidence. After his discharge from the hospital, Davis was charged with his son's murder. Davis was prosecuted for second degree murder but acquitted.

---

[3] "Doc. #" refers to the numbered entry on the district court's docket. Doc. 122 is Davis's third amended complaint.

Davis sued several individual APD officers, including Manley, as well as the City.  As relevant to this appeal, Davis alleged that the City was liable under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for false arrest (Count I) and the unconstitutional search of his home (Count II).  Davis also alleged that the City was liable under Florida law for false arrest (Count XVIII) and malicious prosecution (Count XXVI).  Upon the defendants' motions, the district court dismissed with prejudice all claims against the City.  The district court denied the individual officers' motion to dismiss with respect to Davis's § 1983 claim for the unconstitutional search of his home but granted their motion as to all other claims.  Davis later entered into a confidential settlement agreement with the individual officers, and the district court dismissed with prejudice the claims that remained.

This is Davis's appeal as to his claims against the City.

## II. STANDARD OF REVIEW

We review dismissals under Rule 12(b)(6) *de novo*, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).  To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

Even if the district court erred or failed to address a particular ground, we may affirm the district court "on any ground that finds support in the record," *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (internal quotation marks omitted).  But "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to [our] discretion, . . . to be exercised on the facts of individual cases." *Singleton v. Wulft*, 428 U.S. 106, 121 (1976); *see Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 609 (11th Cir. 1991) (electing not to consider, in the first instance, whether a party had met its summary judgment burden).

## III. DISCUSSION

Davis contends that the district court erred in dismissing his § 1983 and state law claims against the City.  Specifically, he argues that the court failed to consider his allegation that Manley, as the City's Chief of Police, was a final policymaker for purposes of *Monell* liability and that the court erroneously hinged the dismissal of his false arrest and malicious prosecution claims on the officers' arguable probable cause.  We agree with Davis that the district court erred in failing to consider Manley's status as a final policymaker and therefore remand his § 1983 claim against the City based on the unconstitutional search of his home.  We also remand his § 1983 and state-law false arrest claims for the district court to decide in the first instance whether, in light of Florida's so-called "Stand Your Ground"

5

law, Fla. Stat. §§ 776.012, 776.032, there was actual probable cause to support Davis's arrest.  Finally, we affirm the district court's dismissal of Davis's state-law malicious prosecution claim.

## A. Unconstitutional Search Claim (Count II)

Davis challenges the district court's dismissal of his § 1983 claim against the City for the unconstitutional search of his home.  Specifically, he argues that the district court failed to address his allegation that Manley, as the City's Chief of Police, was a final policymaker such that his order to search Davis's home without a warrant rendered the City liable absent any established custom or practice.  We agree.

"When suing local officials in their official capacities under § 1983, the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (footnote omitted).  A "custom is a practice that is so settled and permanent that it takes on the force of law," whereas a "policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).  "Only those officials who have final policymaking authority may render the municipality liable under § 1983" for either a custom or policy.  *Hill v. Clifton*, 74 F.3d 1150,

6

1152 (11th Cir. 1996).  We look to state and local law to determine whether a particular official has final policymaking authority.  *Cooper*, 403 F.3d at 1221. Under some circumstances, a municipality can be liable for a policy based on "'a single decision by [a] municipal policymaker[].'"  *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (plurality opinion)).

In his claim against the City, Davis alleged that "the APD, personally and directly led by Defendant Chief Manley, unlawfully caused the search of Mr. Davis's home without a valid warrant or exigent circumstances."  Doc. 122 at 33. State and local law mandates that the City's Chief of Police is a final policymaker. The Florida Constitution provides that "[m]unicipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government."  Fla. Const. art. VIII, § 2(b).  The City has "authorize[d] the Apopka Police Chief and the Apopka Police Department as the exclusive agency for providing law enforcement services to the residents of the city."  City of Apopka Code of Ordinances Sec. 50-2.  And "there are other indicia in state law that police chiefs in Florida have final policymaking authority in their respective municipalities for law enforcement matters."  *Cooper*, 403 F.3d at 1222 (citing Florida statutes that vest in municipal police chiefs authority to determine police procedure for coordinating communication between law enforcement officers and to declare states of emergency and assume emergency powers).

7

The district court, rather than addressing Davis's allegation that the warrantless search was conducted upon the direction of the Chief of Police, addressed and rejected Davis's alternative allegation that the City had a custom of improper training or permitting the Chief of Police to override established protocols and standard operating procedures. But Davis stated a claim for relief against the City based on a single decision by a final policymaker. *See id.* at 1221.

The City argues that Davis failed to allege in his complaint that Manley was a final policymaker and that this omission is fatal to his claim. We are unconvinced. The complaint clearly alleged that Manley, as Chief of Police, personally directed the warrantless search of the Davis home. The complaint did not expressly state that Manley was a final policymaker, but that is in no way fatal to Davis's claim because whether an individual is a final policymaker is a question of law, not fact. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Complaints must allege facts; they are not required to allege conclusions of law. *Twombly*, 550 U.S. at 570. Moreover, Davis advanced the argument that Manley was a final policymaker for purposes of *Monell* liability in response to the City's motion to dismiss. *See* Doc. 130 at 17 ("[B]oth Florida state law and local law confirms that Chief Manley had final policymaking authority for the City of Apopka in matters of law enforcement and thus his actions could subject the city to § 1983 liability.").

The district court erred in failing to consider Davis's allegation that Manley was a final policymaker for purposes of § 1983. The district court properly concluded that Davis had stated a claim for relief based on his allegation that, while he and the rest of his family were hospitalized, the officers entered his home without a warrant and without exigent circumstances. Since Davis also alleged that Manley, as Chief of Police, personally ordered the search, Davis stated a claim against the City for the unconstitutional search of his home.[4]

## B. False Arrest Claims (Counts I and XVIII)

Davis also contends the district court erred in dismissing his federal and state-law false arrest claims against the City based on the officers' arguable probable cause to arrest him. He argues that the relevant standard for purposes of the City's liability is actual, not arguable, probable cause and that the officers lacked such cause based on Florida's so-called "Stand Your Ground" law. Because Davis is right that the correct standard is actual probable cause and the district court did not consider the impact of Florida's law on whether probable cause existed to arrest him, we vacate the district court's dismissal with prejudice.

---

[4] The City is mistaken that the state criminal court's denial of Davis's motion to suppress based on the inevitable discovery doctrine requires dismissal of his § 1983 claim for the unconstitutional search of his home. *See Chatman v. Slagle*, 107 F.3d 380, 382-83 (6th Cir. 1997) ("[T]he reasoning which supports the use of the Fourth Amendment exclusionary rule and the related inevitable discovery doctrine in criminal cases does not apply in civil rights actions.").

We remand so that the district court can consider this argument in the first instance.[5]

Arguable probable cause, Davis submits, is a qualified immunity standard, and a city cannot be entitled to qualified immunity; thus, claims against the City may be dismissed only if the officers had actual probable cause, a higher standard. We agree with Davis.[6]  *See Owen v. City of Indep.*, 445 U.S. 622, 638 (1980) ("We hold . . . that the municipality may not assert [a defense of qualified immunity based on] the good faith of its officers or agents as a defense to liability under § 1983."); *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (emphasizing that "the arguable probable cause inquiry [for qualified immunity] is distinct from the actual probable cause inquiry" in that arguable probable cause "gives ample room for mistaken judgments" (internal quotation marks omitted)).

_____

[5] We reject the City's argument that the complaint failed to allege that the officers were obliged to follow Florida's Stand Your Ground law. *See* Doc. 122 at 18 ("Under the circumstances, a reasonable officer would have conducted an investigation to determine whether probable cause existed to arrest Mr. Davis for a crime, including . . . conducting a Stand Your Ground investigation upon being informed by Mr. Davis that he shot his son in self-defense.").

We also reject the City's assertion that the grand jury's eventual indictment of Davis on second degree murder charges "insulates the City from liability." Appellee's Br. at 38. This argument flatly contradicts our caselaw. "While the indictment cuts off the length of detention, and thus damages, stemming from the false arrest, the indictment *does not* absolve the [defendant] from liability for the initial false arrest made without any . . . probable cause." *Jones v. Cannon*, 174 F.3d 1271, 1285 n.8 (11th Cir. 1999) (emphasis added).

[6] Initially, the City argues that the district court found that actual probable cause existed, pointing to one sentence in the court's order that reads: "Having found that probable cause existed for Plaintiff's arrest, his state law claims for false arrest . . . and malicious prosecution . . . are due to be dismissed with prejudice." Doc. 133 at 18. But, as Davis points out, the district court made no findings as to probable cause; its findings pertained only to arguable probable cause.

10

To the extent the district court relied on its determination that arguable probable cause existed for the arrest in dismissing Davis's claims against the City, that reliance was error.

We nonetheless may affirm the district court on any ground supported by the record, *see Lucas*, 257 F.3d at 1256, and the City urges us to affirm based on the officers' actual probable cause to arrest Davis. The City maintains that Florida's Stand Your Ground law does not negate probable cause.

"The existence of probable cause at the time of the arrest . . . constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). It also is an absolute bar to a false arrest claim under Florida law. *See Bolanos v. Metr. Dade Cty.*, 677 So. 2d 1005, 1005 (Fla. Dist. Ct. App. 1996). The probable cause standard is the same under Florida and federal law. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).[7] Probable cause to arrest exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee v.*

---

[7] The plaintiff asserting a § 1983 claim bears the burden to show the absence of probable cause, whereas probable cause is an affirmative defense under state law. *Rankin*, 133 F.3d at 1436. But this distinction makes no difference here. "A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). If as a matter of law probable cause existed for Davis's arrest, both Davis's § 1983 false arrest claim and his state-law false arrest claim were due to be dismissed.

11

*Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted). In order for probable cause to exist, "an arrest must be objectively reasonable based on the totality of the circumstances." *Id.* (internal quotation marks omitted).

Under Florida's Stand Your Ground law, "[a] person is justified in using . . . deadly force if he or she reasonably believes that using . . . such force is necessary to prevent imminent death or great bodily harm to himself ." Fla. Stat. § 776.012. A person who uses such deadly force "is immune from criminal prosecution" for the use of force. *Id.* § 776.032(1). The statute expressly includes arrest within the definition of "criminal prosecution." *Id.* And, the statute provides, an officer "may not arrest [a] person for using . . . force unless [the officer] determines that there is probable cause that the force that was used . . . was unlawful." *Id.* § 776.032(2). "Section 776.032(1) expressly grants defendants a substantive right to not be arrested, detained, charged, or prosecuted as a result of the use of legally justified force." *Dennis v. State*, 51 So. 3d 456, 462 (Fla. 2010).

Davis alleged that a reasonable officer would have considered his immunity under Florida's Stand Your Ground law before making an arrest. And, he alleged, he was visibly seriously injured when the officers arrived and told the officers repeatedly that he shot his son in self-defense. He also points to his son's beseeching the officers to leave his father alone. All of this, Davis says, was evidence to the officers that he was immune under Florida law. Davis argues that,

12

taking into account Florida law and knowing what they did about the incident, the officers lacked probable cause to arrest him.

Given that the district court did not address Davis's allegations regarding Florida's Stand Your Ground law and that the parties only cursorily briefed the issue in the district court, we decline to consider in the first instance whether and how Florida's law impacts the probable cause inquiry. *See Singleton*, 428 U.S. at 121; *Clark*, 929 F.2d at 609. Although there are circumstances in which we are "justified in resolving an issue not passed on below," we do not think this is such a case. *Singleton*, 428 U.S. at 121. Thus, we vacate the district court's dismissal with prejudice of Davis's false arrest claims and remand for further proceedings.

## C. Malicious Prosecution Claim (Count XXVI)

Finally, Davis challenges the district court's dismissal of his state-law malicious prosecution claim. The district court dismissed this claim on the same ground it used in dismissing Davis's false arrest claims. We have explained why this reasoning was incorrect.[8] Perhaps anticipating that the City would advocate

---

[8] Even assuming the district court dismissed Davis's malicious prosecution claim based on actual probable cause rather than its findings of arguable probable cause, *see supra* Part III.B & n.7, we are not convinced that its reasoning would be correct. In the § 1983 malicious prosecution context, "[p]robable cause is required to *continue* a prosecution, not just to arrest a defendant or to institute a prosecution." *Kjellsen v. Mills*, 517 F.3d 1232, 1238 (11th Cir. 2008). Thus, if an investigation "negated probable cause, then [a plaintiff] might be able to prove a malicious prosecution claim." *Id.* The common law elements of malicious prosecution, which a plaintiff must prove to establish a claim under § 1983, are the same as required under Florida law. *See Wood v. Kesler*, 323 F.3d 872, 881-82 (11th Cir. 2003); *Durkin v. Davis*, 814 So. 2d

13

affirming the district court's judgment on the alternative ground that the City is immune from liability on this claim,[9] Davis argues that the City is not immune from liability for the particular type of malicious prosecution alleged in his complaint. The City responds that it clearly enjoys immunity under Florida law. We agree.

Florida law "bars an action for malicious prosecution against the state or its subdivisions arising from the malicious acts of their employees." *Johnson v. Fla. Dep't of Health & Rehab. Servs.*, 695 So. 2d 927, 930 (Fla. Dist. Ct. App. 1997) (citing Fla. Stat. § 768.28(9)(a)). Davis contends that there is a distinction between "actual malice"—for which the City would be immune—and "legal malice"—that is, the absence of probable cause—the latter being all that a malicious prosecution claim requires. But the court in *Johnson* expressly contemplated that a city's immunity would reach malicious prosecution claims, emphasizing that "[m]alice is not only an essential element of malicious prosecution; it is the gist of such a cause of action." *Id.* (internal quotation marks omitted). We therefore reject Davis's argument and hold that the district court correctly dismissed his malicious prosecution claim against the City.

_____

1246, 1248 (Fla. Dist. Ct. App. 2002). Thus, it appears that probable cause at the moment of arrest would not necessarily defeat a malicious prosecution claim under Florida law.

[9] The district court dismissed another claim against the City, one for intentional infliction of emotional distress, on the ground that under Florida law the City is immune in actions arising out of the malicious acts of its police officers.

14

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment in part and vacate in part.  We remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**