[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16292
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-01067-RWS


HERBERT W. PERKINS,

                                                        Plaintiff - Appellee,

versus

MICHAEL C. THRASHER,
individually,

                                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 19, 2017)

Before WILSON, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Michael C. Thrasher, a former Sergeant with the Clayton County Police Department (CCPD), appeals the district court's denial of his motion for summary judgment in a civil rights lawsuit filed against him by Herbert W. Perkins.

In an 8-count complaint, Perkins brought claims for false arrest, malicious prosecution and excessive force pursuant to 42 U.S.C. § 1983, as well as five Georgia state law claims for malicious arrest, malicious prosecution, false imprisonment, punitive damages and attorney's fees.  The district court granted Thrasher's motion for summary judgment on the § 1983 excessive force claim based on qualified immunity.  The court also granted summary judgment on the state law claims for malicious arrest, malicious prosecution, and false imprisonment.  But the district court denied summary judgment on the two remaining § 1983 claims and the two remaining state law claims. After a careful review of the parties' briefs and the record, we affirm in part and reverse in part.

## I.    BACKGROUND

The only undisputed fact in this case is that on March 7, 2012, Sergeant Thrasher walked outside of the CCPD station headquarters and saw Perkins walking around the parking lot.  What followed after that, however, is heavily disputed by the parties.

### a.  Thrasher's Version

2

According to Thrasher, Perkins was wandering about in a parking lot that was typically used by CCPD employees, although, on occasion, visitors would park there.  Thrasher, a 12-year veteran of the CCPD, did not know Perkins and was confident that he could recognize other CCPD personnel.   Thrasher grew suspicious of Perkins—who Thrasher thought was dressed abnormally given his large winter coat, fur hood, and cowboy boots—and continued to watch him.  Perkins had now wandered to a part of the lot that was occupied almost entirely by unmarked detective cars and marked patrol units.  Because Thrasher was aware of recent thefts at police precincts and had never seen parking by the public in this area of the parking lot, he continued to observe Perkins.

Perkins seemed to notice that Thrasher was watching him, prompting him to walk expeditiously to his truck.  As Perkins began to pull away, Thrasher pulled up in his patrol car and blocked him from leaving.  Thrasher yelled for Perkins to stop his vehicle, and Perkins complied.  When Thrasher began to question Perkins about his presence in the lot, Perkins became agitated—yelling and demanding to know why he was being stopped.  Thrasher, realizing that his patrol car's dash-cam was not on, returned to his patrol car to activate it in an effort to record the "heated" confrontation.  Perkins told Thrasher that his wife, Patricia Perkins, was a civilian employee at CCPD, but Thrasher did not believe him.

3

After receiving information from dispatch about Perkins being "familiar" for obstruction, for battery on police, and for having a firearm permit, Thrasher asked if Perkins had a weapon with him, to which Perkins replied that he did not. Thrasher again did not believe Perkins and asked him to step out of the car so that Thrasher could pat him down. During the pat-down Perkins pulled away and Thrasher took Perkins to the ground, arresting him for obstruction. Perkins was later charged for obstruction, loitering, and disorderly conduct.

### b. Perkins's Version

However, Perkins's account of the encounter differs significantly. According to Perkins, he was walking around the parking lot, looking for his car. His wife Patricia Perkins, a civilian employee for CCPD, took his car to work that morning while Perkins took her truck to get serviced at the dealership. After the dealership finished, Perkins went to CCPD station headquarters to switch the cars. However, it appeared that Patricia had not gone straight to work and instead drove to the Clayton County Board of Commissioner's Office where she was attending an award ceremony. Thus, Perkins could not find his car in the parking lot because it was not there. And after failing to get in touch with Patricia to find out where she was, Perkins walked back to the truck to go home.

But as Perkins was getting into the truck to drive away, Thrasher began driving toward him in an effort to block him from leaving and yelled for Perkins to

4

stop.  Perkins obeyed.  Thrasher told Perkins that he needed to give a lawful explanation for why he was walking around the CCPD parking lot, and Perkins explained that he was looking for his car.  Perkins admits that he was loud but denies that he was hostile.  Perkins kept trying to explain why he was there to no avail, as Thrasher did not believe him and continued to imply that he was lying.

Thrasher then received information from dispatch about Perkins being "familiar" for obstruction, for battery on police and for having a firearm permit.  Thrasher asked if Perkins had a weapon with him, to which Perkins replied that he did not but that he did have a permit.  Thrasher then opened the driver's side door and asked Perkins to step out.  Thrasher advised Perkins that he was going to pat him down.  But during the pat-down Perkins buckled because Thrasher hit him in the groin, resulting in Thrasher taking Perkins to the ground.  Thrasher handcuffed and arrested him for obstruction.

## II.    DISCUSSION

We review a district court's summary judgment order de novo and "view all facts and reasonable inferences in the light most favorable to the nonmoving party."  *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007).  "Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place."  *Gilmore v.*

5

*Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).   The initial burden is on the defendant to establish that he was acting within his discretionary authority, and then the burden shifts to the plaintiff to show that the defendant violated a clearly established constitutional right.  *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012).  The parties do not dispute that Thrasher was acting within his discretionary authority, thus the burden shifts to Perkins to establish that Thrasher violated Perkins's clearly established constitutional rights.  *See id*.

### a. False Arrest

The Fourth Amendment protects individuals from unreasonable seizures—including unreasonable arrests.  *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).   An arrest without probable cause can be an unreasonable seizure in violation of the Fourth Amendment and serve as the basis for a § 1983 claim for false arrest.  *See Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). Probable cause exists if the officer knows of facts and circumstances that warrant a reasonable belief that the individual committed or was committing a crime.  *Skop*, 485 F.3d at 1137.  In arguing that the conduct was protected on qualified immunity grounds, "an officer need not have actual probable cause, but only 'arguable' probable cause[,]" meaning that reasonable officers in the same position could have believed that probable cause existed.  *Brown*, 608 F.3d at 734.

Taking the facts in the light most favorable to Perkins, as we must, we agree with the district court that Thrasher lacked arguable probable cause to arrest Perkins for either obstruction or loitering.

In Georgia, "obstruction of a law enforcement officer is committed when a person knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties." *Mayhew v. State*, 682 S.E.2d 594, 597–98 (Ga. Ct. App. 2009) (internal quotation marks omitted). Perkins's conduct during the pat-down—buckling due to being hit in the groin—cannot serve as probable cause for an obstruction arrest if it was caused by Thrasher himself. And neither could Perkins's attitude during the encounter. Although he was loud and agitated, Perkins complied with all of Thrasher's requests—stopping the car, explaining his presence in the parking lot, and allowing a pat-down. Under Georgia law, this is not the kind of behavior that can be classified as obstruction. *See id*. at 598 (finding refusal to comply with commands as sufficient proof of obstruction); *Stryker v. State*, 677 S.E.2d 680, 682–83 (Ga. Ct. App. 2009) (finding that directly disobeying and officer's commands constitutes sufficient proof of obstruction); *Duke v. State*, 423 S.E.2d 427, 428–29 (Ga. Ct. App. 1992) (finding that lying to an officer is sufficient proof of obstruction).

Furthermore, Georgia law defines loitering as an individual being in a certain place, at a time or manner that is unusual for law-abiding citizens, under

7

circumstances that merit a reasonable and justifiable concern that nearby property or persons are in danger—after the individual is given an opportunity to dispel the concern. *See* O.G.C.A. § 16-11-36(a). Perkins explained to Thrasher that he was in the parking lot only looking to switch out his and Patricia's vehicles, precluding a finding that Thrasher had arguable probable cause to arrest him for loitering. Construing the facts in Perkins's favor, Thrasher's actions in arresting Perkins would constitute a violation of his clearly established Fourth Amendment rights. *See Skop*, 485 F.3d at 1143.

### b. Malicious Prosecution

The Fourth Amendment's protection against unreasonable seizures also extends to malicious prosecution, which is cognizable under § 1983. *Wood v. Kessler*, 323 F.3d 872, 881 (11th Cir. 2003). A malicious prosecution claim, pursuant to § 1983, requires a showing of the common law elements of malicious prosecution and a Fourth Amendment violation of the right to be free from unreasonable seizures. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). "[F]or purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution include[]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 881–82.

8

Again, taking the facts in the light most favorable to Perkins, Thrasher is not entitled to summary judgment. As discussed above, Thrasher lacked arguable probable cause to arrest Perkins for either obstruction or loitering if the facts are construed in Perkins's favor. Further, Thrasher's argument that Perkins cannot establish malice also fails. Georgia law permits malice to be "inferred from want of probable cause." *See Wilborn v. Elliot*, 254 S.E.2d 755, 756 (Ga. Ct. App. 1979). Because Thrasher lacked probable cause, malice can be inferred. *See id.* As such Thrasher is not entitled to summary judgment on this claim.

## c. State Law Claims for Punitive Damages and Attorney's Fees

In its order ruling on Thrasher's motion for summary judgment, the district court granted Thrasher summary judgment on all of Perkins's substantive state law claims: that is, his state law claims for malicious arrest, malicious prosecution, and false imprisonment. Perkins has not appealed the dismissal of those claims. The district court did not mention the derivative state law claims for punitive damages and attorney's fees in its discussion. In its conclusory paragraph listing the surviving federal claims on which Thrasher's motion for summary judgment had been denied, however, the court also included these two derivative state law claims as surviving Thrasher's motion for summary judgment.

We suspect that these derivative state law claims were mistakenly included in the list of surviving claims. They were not discussed nor would there be any

9

apparent reason why a derivative state law claim would survive if the substantive state law claims from which it was derived was dismissed. In fact, Perkins has not responded in his brief to Thrasher's contention that the state derivative claims should likewise be dismissed.

At any rate, Perkins's Georgia state law claims for punitive damages under O.C.G.A § 51-12-5.1 and attorney's fees under O.C.G.A. § 13-6-11 are derivative of Georgia tort law claims and thus require an underlying claim. *See Lilliston v. Regions Bank*, 653 S.E.2d 306, 311 (Ga. Ct. App. 2007) (explaining that dismissal of underlying substantive claims warrants dismissal of derivative claims for punitive damages under O.C.G.A. § 51-12-5.1); *United Cos. Lending Corp. v. Peacock*, 475 S.E.2d 601, 602 (Ga. Ct. App. 1996) (explaining that a claim for attorney's fees under O.C.G.A. § 13-6-11 requires relief on an underlying claim); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1316 (11th Cir. 2004) (per curiam) (establishing that a claim for attorney's fees under O.C.G.A. § 13-6-11 requires an underlying claim). The district court dismissed all of Perkins's substantive state law claims for malicious arrest, malicious prosecution, and false imprisonment. As such, Perkins's Georgia law claims for punitive damages and attorney's fees fail as a matter of law.

### III.    CONCLUSION

Thrasher is not entitled to summary judgment based on qualified immunity as it relates to Perkins's § 1983 claims for false arrest and malicious prosecution. But Thrasher is entitled to summary judgment on Perkins's Georgia law claims for punitive damages and attorney's fees.

**AFFIRMED IN PART, REVERSED IN PART.**

11